UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
CHEVRON CORPORATION,

                Plaintiff,

-against-

MARIA AGUINDA SALAZAR, et al.,                11 Civ. 3718 (LAK)

                Defendants,

-and-

STEVEN DONZIGER, et al.,

                Intervenors.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**ORDER**

LEWIS A. KAPLAN, *District Judge.*

        On April 15, 2011, the Court entered a scheduling order which, among other things, required service of (1) Rule 44.1 notices by May 13, 2011, (2) initial expert disclosures by July 1, 2011, and (3) rebuttal expert disclosures by August 1, 2011.

        All parties filed extensive if somewhat conclusory Rule 44.1 notices by the required date. On or about July 1, 2011, plaintiff served initial expert disclosures with respect to 29 proposed expert witnesses, some as to matters of foreign law. The LAP Representatives to date apparently have served none although they at some point referred to six affidavits of experts that had been submitted in other proceedings. After waiting several weeks following the service of plaintiff's expert disclosures, however, the LAP Representatives moved for an order striking 26 of plaintiff's 29 proposed expert witnesses and limiting the scope of the proceedings or, alternatively, for an extension of time within which to designate rebuttal witnesses. DI 132, 134. Without prejudice to the balance of the motion, the Court previously extended the time for designation of defense experts in response to these 26 plaintiff's experts until August 15, 2011. DI 163. It then heard argument on August 2, 2011, following which plaintiff withdrew 10 of the 26 disputed witnesses. Thus, sixteen witnesses remain the subject of the LAP Representatives' motion.

        1.      The LAP Representatives argue that the 16 proposed experts who remain in

2

dispute should be stricken principally because, in their view, (a) the only possibly relevant issue on plaintiff's case is its claim that the Ecuadorian judgment is unenforceable on the ground that the Ecuadorian system does not afford impartial tribunals or due process, and (b) the proposed testimony of those witnesses would go to other matters, most notably other bases for non-recognition or unenforceability, and therefore would be irrelevant.[1] In asserting that the only relevant issue is whether the Ecuadorian judgment is unenforceable on the ground that the Ecuadorian system does not afford impartial tribunals or due process, the LAP Representatives acknowledge that plaintiff has asserted several other grounds for non-recognition and unenforceability but claim that all of the other grounds asserted are insufficient. In substance, then, the LAP Representatives' motion effectively seeks partial summary judgment or judgment on the pleadings dismissing much of the plaintiff's case. Moreover, it does so on short notice and on very limited legal basis. Their memorandum of law devotes only four pages to the sufficiency of the numerous other grounds for non-recognition and unenforceability advanced by plaintiff and, in light of plaintiff's response, appears to be of at best debatable merit.[2]

It would serve neither side, particularly in light of the importance of the matter, to reach these issues in such a context and on such a basis. Accordingly, as a matter of sound judicial administration, the Court declines to do so. While one or more of the issues that underlie the LAP Representatives' relevance arguments may prove amenable to resolution on motion, the better course

---

[1] It should be noted that the LAP Representatives cite *Daubert* essentially for the proposition that expert testimony must be relevant to an issue in dispute but not otherwise. There are no contentions in this motion that particular experts are not qualified on the subjects on which they propose to testify, that their opinions are not reliable, or any of the host of other arguments frequently made with respect to the admissibility of expert testimony.

[2] For example, the LAP Representatives argue that certain witnesses whose proposed testimony allegedly would go to the existence of fraud in the procurement of the Ecuadorian judgment should be excluded because only extrinsic, and not intrinsic, fraud is a ground for non-recognition and non-enforceability. DI 130, at 6-7. Plaintiff, on the other hand, cites substantial authority for the proposition that CPLR § 5304, which is a New York codification of the Uniform Act for the Recognition of Foreign Country Money Judgments, eliminated the distinction between intrinsic and extrinsic fraud and recognizes either species as a basis for relief. 11 WEINSTEIN, KORN & MILLER, NEW YORK CIVIL PRACTICE ¶ 5304.02 (2d ed. 2011); Barbara Kluzer, *Recognition of Foreign Country Judgments in New York,* 18 BUFF. L. REV. 1, 31 (1968). Regardless of whether the distinction survives in name, it often has been recognized nominally but not in substance. RESTATEMENT (SECOND) OF JUDGMENTS § 70, cmt. c. (1982); *cf.* DAVID SIEGEL, NEW YORK PRACTICE § 429 (3d ed. 1999) (recognizing slipperyness of the purported distinction). Moreover, the distinction has been abandoned broadly and may well have no bearing in many other jurisdictions, the law of which may govern in at least some respects. *See, e.g.,* RESTATEMENT (SECOND) OF JUDGMENTS § 70, cmt. c. Finally, plaintiff argues with some force that even if one took the view that intrinsic fraud ordinarily would not be ground for non-recognition and non-enforceability, it is relevant in this case because it supplied the motive for a cover-up that constituted extrinisic fraud by any definition.

is to await fuller briefing and, quite possibly, a fuller development of the record. The Court therefore declines to rule on the sufficiency of aspects of the plaintiff's claims in the context of the present motion.

2. At first blush, the fact that plaintiff, even after withdrawing 10 proposed witnesses, has designated 19 experts seems to support an extension. But the extent to which it does so is somewhat exaggerated because the LAP Representatives long have been aware that they would need expert testimony on many of subjects on which the plaintiff's witnesses propose to testify and, in some cases, of the identity and substance of the proposed testimony of those witnesses.

*Foreign and International Law*

Five of the 16 remaining disputed experts propose to testify to matters of Ecuadorian or international law.

It has been obvious since the outset of this action that both sides would rely on experts on matters of foreign law – a fact confirmed on May 13, 2011 when all parties, including the LAP Representatives, served notices under Fed. R. Civ. P. 44.1. So neither the fact that plaintiff would designate a number of foreign law experts nor the subjects on which it would do so has come as any surprise to the LAP Representatives, as these have been known to them for quite some time.

The same is true of plaintiff's international law expert (Paulsson), who proposes to testify on the subject of the international law concept of due process. Failure of Ecuador to afford due process of law in the international law sense would be a mandatory ground of non-recognition. That issue was litigated, on a provisional basis, on the preliminary injunction motion. Indeed, Professor Paulsson submitted a declaration in support of that motion (No. 11 Civ. 0691 (LAK), DI 102-103), which is quite similar to his expert report served on July 1, DI 131, Ex. Q. The LAP Representatives thus have not been caught unawares.[3]

*Forensic Experts*

Four of the remaining disputed experts propose to testify on the subject of whether the Ecuadorian decision was written by the judge who signed it and the Cabrera report by Cabrera or, instead, in whole or in part by the Lago Agrio Plaintiffs or others working on their behalf. The LAP Representatives have known of plaintiff's allegations in these respects for quite some time. In fact, one of the plaintiff's experts (Younger) filed a declaration in this case on May 2, 2011. No. 11 Civ. 0691, DI 300.

---

[3] Moreover, it is worth noting that the Ecuadorian and international law experts appear unlikely to be trial witnesses, at least before any jury, as foreign law is an issue of law for the court. FED. R. CIV. P. 44.1.

4

*Technical Experts*

Five of the remaining disputed experts propose to testify, broadly speaking, to the lack of basis and evidentiary support for parts of the Ecuadorian judgment including, *inter alia,* the alleged lack of any evidence of a causal connection between alleged health problems and the alleged environmental contamination.

To be sure, this is not an appellate court of Ecuador, and this Court assumes for present purposes that plaintiff would not entitled to relief here solely upon proof that the Ecuadorian court erred, even materially, in one or more respects as a matter of Ecuadorian law. On the other hand, plaintiff offers this evidence not to show simply that the Ecuadorian decision is wrong as a matter of Ecuadorian law. It argues that the lack of basis and evidentiary support is so egregious, even allowing for differences between Ecuadorian and U.S. law, that it circumstantially supports various other bases for non-recognition and non-enforceability including a failure to afford fair tribunals and due process and a contention that the judgment, at least in major respects, is penal in nature. *See, e.g.,* Tr., Aug. 2, 2011, at 7:18-8:14. Thus, it may be necessary for the parties and the Court to walk a fine line in trying or otherwise resolving this aspect of the case on the merits. But the Court will not, at least in the present context, foreclose the plaintiff from attempting to walk that line by excluding these proposed experts. Nor can the LAP Representatives claim unfair prejudice by being placed in a position of having to respond to this testimony. As they pointed out during oral argument, all or most of the plaintiff's experts in this category gave evidence in Ecuador. *Id.*, at 3:7-11. The LAP Representatives presumably answered them there and thus are in a position to do so here.

*Other Experts*

The two remaining disputed experts (Messrs. Kaczmarek and Priest) propose to testify, respectively and broadly speaking, regarding (a) the Ecuadorian oil industry and its importance to its economy, and (b) whether the Ecuadorian judgment, from an economic point of view, is penal and/or regulatory in character.

3. In the last analysis, the most significant issue presented by this motion is whether and to what extent the Court should further extend the time within which the LAP Representatives may designate experts to rebut the proposed testimony of these 16 plaintiff's experts, a few of whom the LAP Representatives have known about for months and many of whom propose to testify on subjects that have been obvious for a considerable period. Moreover, the nub of the issue pertains primarily to the number of witnesses given the time afforded previously as distinct from the subjects on which they propose to testify. It was on the former basis alone that the Court previously extended the LAP Representatives' time to designate experts in rebuttal to the disputed group from August 1, 2011 until August 15, 2011.

5

In determining whether to grant a further extension, the Court takes into consideration the extent to which the LAP Representatives were or should have been aware well before July 1 that they would need to meet expert testimony on the subjects on which most of the 16 disputed experts propose to testify. It considers also the fact that the LAP Representatives have submitted no specific affidavits or declarations describing any efforts they have made to line up experts to rebut the 16 disputed plaintiff experts, let alone any difficulties they have encountered in doing so.[4] In the Court's judgment, the roughly six weeks between July 1 and August 15 ought to be more than enough for the LAP Representatives to meet the proposed testimony with experts of their own. Nevertheless, in an abundance of caution, in the interests of fairness, and in the exercise of discretion, the Court will grant a brief further extension.

For the foregoing reasons, the LAP Representatives' motion for an order striking 26 of Chevron's proposed expert witnesses and limiting the scope of the proceedings or, alternatively, for an extension of time within which to designate rebuttal witnesses (DI 132, 134) is granted to the extent that the LAP Representatives' time to designate experts in rebuttal to the proposed testimony of those of plaintiff's 16 disputed proposed experts that remain and provide Rule 26 disclosures regarding the LAP Representatives' experts in rebuttal thereto is extended to and including August 22, 2011,[5] and denied in all other respects. In view of the extended period afforded to them, the LAP Representatives shall make such disclosures on a rolling basis as promptly as possible. The time for completion of expert discovery is extended from September 15, 2011 to and including September 29, 2011, provided, however, that the date for completion of all fact discovery remains September 15, 2011, and all other aspects of the scheduling order remain unchanged.

SO ORDERED.

Dated:    August 8, 2011

_____
Lewis A. Kaplan
United States District Judge

(The manuscript signature above is not an image of the signature on the original document in the Court file.)

---

[4] They did describe an incident involving a proposed expert on a subject other than those on which the 16 disputed experts would opine. DI 174.

[5] This extension will result in the LAP Representatives having been afforded between seven and eight weeks within which to designate experts to rebut the testimony of plaintiff's challenged witnesses and to make Rule 26 disclosures regarding them.