UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------x
CHEVRON CORPORATION,

                    Plaintiff,

                 -against-

MARIA AGUINDA SALAZAR, et al.,                    11 Civ. 3718 (LAK)

                    Defendants,

                 -and-

STEVEN DONZIGER, et al.,

                    Intervenors.
------------------------------------------x

## ORDER

LEWIS A. KAPLAN, *District Judge.*

        The LAP Representatives move for judgment on the pleadings dismissing the amended complaint and the prayer for a worldwide injunction. They seek also judgment as a matter of law dismissing Chevron's defenses to enforcement of the Ecuadorian judgment.[1]  DI 156. The motion is without merit.

        1.    As an initial matter, the motion proceeds from the premise that there can be no actual controversy unless there is a judgment in Ecuador that is final within the meaning of Article 53 of the New York CPLR, as CPLR § 5302 provides that Article 53 applies to foreign judgments that are "final, conclusive and enforceable." The Court disagrees with that premise.

        First, Chevron seeks a declaration that the judgment is unenforceable

---

[1] In view of the movants' withdrawal (DI 183) of Exhibits I through Q, which originally were submitted in support of the motion (DI 158), the Court excludes them from consideration on the motion.

anywhere outside Ecuador and a commensurate injunction. That fact alone makes the premise of much of the motion untenable.

- It is undisputed that "Ecuador is a party to treaties pursuant to which the LAPs are able to seek, and perhaps to obtain, preventive measures orders in other Latin American countries, including Colombia, that would freeze or attach Chevron assets" based upon the judgment notwithstanding the pendency of the appeal and its current unenforceability in Ecuador. *Chevron Corp. v. Donziger,* 768 F. Supp.2d 581, 629 (S.D.N.Y. 2011).

- The LAPs intend to seek enforcement of the judgment in multiple jurisdictions around the world. While the Court assumed for purposes of the preliminary injunction motion, in the absence of proof of contrary and pertinent foreign law, that grounds upon which Chevron could resist enforcement abroad would be the same as in New York, *id.* at 630 & n. 278, further proceedings in this case may result in its application of foreign substantive and procedural law to the issue whether the judgment is enforceable elsewhere. In fact, the LAP Representatives already have served notice that they intend to rely upon:

    > "[t]he law of any jurisdiction where Chevron Corporation maintains assets, including, but not limited to, Angola, Argentina, Australia, Azerbaijan, Bangladesh, Brazil, Cambodia, Canada, Chad, China, Colombia, Democratic Republic of the Congo, Denmark, Indonesia, Kazakhstan, Myanmar, the Netherlands, Nigeria, Norway, the Partitioned Zone between Saudi Arabia and Kuwait, the Philippines, Republic of the Congo, Singapore, South Africa, South Korea, Thailand, Trinidad and Tobago, the United Kingdom, Venezuela, and Vietnam, as it pertains to the recognition and enforcement of foreign judgments and the seizure of assets."

    If, as the LAP Representatives claim on this motion, this case depends entirely on Article 53 of the CPLR, their acknowledgment that foreign law at least may govern issues pertaining to the recognition and enforcement of the Ecuadorian judgment and the seizure of assets would have been bootless. In any case, even at this moment, there is an actual controversy between Chevron and the defendants as to the enforceability of the judgment regardless of the pendency of the appeal in Ecuador.

Second, the LAP Representatives' argument proceeds also from the premise that any remedy Chevron may have with respect to enforcement or threatened enforcement of the

judgment must be found under Article 53 of the CPLR. This premise evidently rests on the assumptions that Texaco's representations long ago as to the grounds upon which it might challenge any judgment entered against it in Ecuador if the *Aguinda* action were dismissed for *forum non conveniens* (a) bind Chevron, (b) apply to challenges to a judgment against Chevron, which was not a party to the *Aguinda* action, as opposed to a judgment against Texaco, and (c) limit not only the the *grounds* on but also the *forum* in and the *procedural rules* under which enforcement might be resisted. In other words, it rests on the assumption that Texaco's statement that it reserved the right to resist enforcement of any judgment entered against it in Ecuador on the grounds set forth in N.Y. CPLR Article 53 forecloses Chevron from resisting enforcement of a judgment rendered against Chevron in any forum and by any procedure other than by defending an application by the Ecuadorian judgment creditors for recognition and enforcement in New York under CPLR Article 53. The pleadings in this case do not establish that any of these assumptions, let alone the premise that rests upon them, is indisputably correct. Indeed, even in New York, Article 53 of the CPLR is not the exclusive vehicle by which a foreign judgment may be enforced or its enforcement resisted. *See* N.Y. CPLR § 5307.

A good deal more could be said along these lines. But there is no need to do so at this juncture.

2. The LAP Representatives' first two arguments for dismissal are that Chevron's declaratory judgment claim is premature and, in any case, that the Court should decline to entertain the action. For reasons given above as well as in the opinion granting Chevron's motion for a preliminary injunction,[2] both arguments are without merit.

3. The LAP Representatives argue that a worldwide injunction barring enforcement is improper under New York's Recognition Act. The argument is unpersuasive. Even assuming that Chevron were bound by Texaco's statements in the *Aguinda* case, there would be no reason why it could not resist enforcement anywhere in the world on the grounds reserved by Texaco and, if an appropriate case were made out for injunctive relief, to have it.

4. Finally, the LAP Representatives seek dismissal of all or most of the grounds upon which Chevron seeks a declaration that the judgment is neither recognizable nor enforceable on the ground that they are insufficient as a matter of law. These arguments are readily disposed of.

    (a) The contention that Chevron's claim that Ecuador's legal system does not provide impartial tribunals and procedures compatible with due process fails as a matter of law rests on a judicial estoppel argument that this Court finds

---

[2] 768 F. Supp.2d at 637-38.

unpersuasive or, at least, unproved and not a matter determinable on the pleadings. This matter is dealt with fully in the memorandum opinion issued on this date.

    (b)    The LAP Representatives contend that Chevron (a) is estopped to dispute personal jurisdiction in Ecuador by statements made in the *Aguinda* litigation, and (b) is foreclosed from making the argument because it defended on the merits in Ecuador. Argument (a) is untenable, at least in the context of a motion for judgment on the pleadings, for reasons set forth in the memorandum opinion of even date. Argument (b) is more promising on the merits for the LAP Representatives, as New York may afford little latitude for participation in a foreign proceeding that would preserve a personal jurisdictional objection. *See, e.g., CIBC Mellon Trust Co. v. Mora Hotel Corp., N.V.,* 100 N.Y.2d 215, 223-26 (2003).. But the issue cannot be resolved on the pleadings, as the pleadings do not contain sufficient factual basis for doing so. The argument remains open to the LAP Representatives on a motion for summary judgment or at trial..

    (c)    The LAP Representatives argue that Chevron's allegations of fraud were considered and rejected by the Ecuadorian court and therefore cannot be a basis for challenging the Ecuadorian judgment. The argument relies essentially on the distinction between intrinsic and extrinsic fraud and the assumption that Article 53 of the CPLR incorporates that distinction and limits non-recognition to cases of extrinsic fraud. The argument is misguided for a host of reasons.

    (1)    To begin with, extrinsic fraud, as defined in the seminal case of *United States v. Throckmortion,* 91 U.S. 61 (1878), includes situations in which:

> "by reason of something done by the successful party to a suit, there was in fact no adversary trial or decision of the issue in the case. Where the unsuccessful party has been prevented from exhibiting fully his case, by fraud or deception practised on him by his opponent, as by keeping him away from court, a false promise of a compromise; or where the defendant never had knowledge of the suit, being kept in ignorance by the acts of the plaintiff; or where an attorney fraudulently or without authority assumes to represent a party and connives at his defeat; or where the attorney regularly employed corruptly sells out his client's interest to the other side,-these, *and similar cases which show that there has never been a real contest in the trial or hearing of the case,* are reasons for which a new suit may be sustained to set aside and annul the former judgment or decree, and open the case for a new and a fair hearing." *Id.* at 65-66 (emphasis added).

5

It includes situations in which a judgment is obtained by coercion or duress. *E.g., Bailey v. IRS,* 188 F.R.D. 346, 354 (D. Ariz. 1999).

The amended complaint amply alleges extrinsic fraud in that it alleges that the LAPs obtained the Ecuadorian judgment by, among other means, intimidation or corruption of the court, threats of violence against and bullying of judges, the use of political influence to obtain favorable rulings based on judges' fear of adverse repercussions, the use of pressure tactics to intimidate the Ecuadorian judges, extortion of at least one Ecuadorian judge, and the use of influence to cause the Ecuadorian government to pressure the courts and intimidate judges. *E.g.,* Am. Cpt. ¶¶ 69, 72, 74-77, 80. Thus, even if the extrinsic-intrinsic decision the LAP Representatives advocate were valid, Chevron's contention that the judgment at issue is neither recognizable nor enforceable by reason of fraud would be sufficient. *See also Aoude v. Mobil Oil Corp.,* 892 F.2d 1115, 1118 (1st Cir. 1989) ("A 'fraud on the court' occurs where it can be demonstrated, clearly and convincingly, that a party has sentiently set in motion some unconscionable scheme calculated to interfere with the judicial system's ability impartially to adjudicate a matter by improperly influencing the trier or unfairly hampering the presentation of the opposing party's claim or defense."); *In re Intermagnetics America, Inc.,* 926 F.2d 912, 916 (9th Cir. 1991).

      (2)      The premise that only extrinsic, as opposed to intrinsic, fraud is a basis for relief under Article 53 of the CPLR is not persuasive, at least at this stage of the case. While there are some, particularly older, New York cases that have paid at least lip service to the intrinsic-extrinsic distinction, Article 53, New York's enactment of the Uniform Foreign Country Money Judgments Recognition Act (the "Act"), did not occur until 1970. While the Act makes fraud a ground for declining to recognize or enforce a foreign judgment, it does not in terms limit the nature of the relevant fraud to that historically classified as extrinsic. That distinction, moreover, has been abandoned by Fed. R. Civ. P. 60(b)(3), which allows relief from a judgment on the basis of either. It similarly has been abandoned by the Restatement (Second) of Judgments. RESTATEMENT (SECOND) OF JUDGMENTS § 70 cmt. c. In all the circumstances, including the broad rejection of the extrinsic-intrinsic distinction and the fact that Article 53 of the CPLR is merely the enactment of a uniform act designed to achieve national uniformity as far as possible, N.Y. CPLR § 5308, this Court concludes that the New York Court of Appeals, were it confronted with the question, would construe Article 53 to permit relief from a foreign country money judgment on the basis of

        intrinsic fraud. Indeed, that is the view of both the leading treatise on New York practice and an article that was presented to the Legislature before Article 53 was adopted and that is regarded as an authoritative source for its interpretation. 11 WEINSTEIN, KORN & MILLER, NEW YORK CIVIL PRACTICE ¶ 5304.02 (2d ed. 2011); Barbara Kulzer, *Recognition of Foreign Country Judgments in New York,* 18 BUFF. L. REV.1, 31 (1968); *see Nippon Emo-Trans, Ltd. v. Emo-Trans, Inc.,* 744 F. Supp.2d 1215, 1219 & n.4 (E.D.N.Y. 1990) (appropriate to look to Kulzer article in construing Article 53, as bill commentary submitted to the Legislature when statute enacted referred to it).

        (3)    In any case, the distinction between extrinsic and intrinsic fraud, even where purportedly observed, is difficult to apply and often observed in name only. RESTATEMENT (SECOND) OF JUDGMENTS § 70, cmt. c; *see* DAVID SIEGEL, NEW YORK PRACTICE § 429 (3d ed. 1999). It would be inappropriate to dismiss the fraud theory on the pleadings, as the facts are far from undisputed.

    5.    The Court has considered the LAP Representatives' other arguments and finds them unpersuasive.

    Accordingly, for the reasons set forth above and those set forth in the memorandum opinion of even date, the LAP Representatives' motion for judgment on the pleadings [DI 156] is denied in all respects.

    SO ORDERED.

Dated:    August 31, 2011

                                      _____
                                        Lewis A. Kaplan
                                        United States District Judge

(The manuscript signature above is not an image of the signature on the original document in the Court file.)