UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
CHEVRON CORPORATION,

                Plaintiff,


        -against-


MARIA AGUINDA SALAZAR, et al.,               11 Civ. 3718 (LAK)

                Defendants,


        -and-


STEVEN DONZIGER, et al.,

                Intervenors.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x


## MEMORANDUM OPINION


Appearances:


                Randy M. Mastro
                Andrea E. Neuman
                Scott A. Edelman
                William E. Thompson
                GIBSON, DUNN & CRUTCHER, LLP
                *Attorneys for Plaintiff*


                Julio C. Gomez
                GOMEZ, ATTORNEY AT LAW LLC

                Carlos A. Zelaya, II
                F. Gerald Maples
                F. GERALD MAPLES, PA
                *Attorneys for Defendants Hugo Gerardo Camacho Naranjo*
                *and Javier Piaguaje Payaguaje*

LEWIS A. KAPLAN, *District Judge.*

This is an action by Chevron Corporation ("Chevron") for, among other things, a declaration that a multibillion dollar judgment entered against it by a provincial court in Lago Agrio, Ecuador (the "Judgment") is not entitled to recognition or enforcement and an injunction against its enforcement outside of Ecuador. The defendants include the Ecuadorian plaintiffs, referred to here and elsewhere as the Lago Agrio Plaintiffs (the "LAPs") and others. The matter is before the Court on the motion of the two LAPs who have appeared in and are defending this action (the "LAP Representatives") for judgment on the pleadings dismissing the amended complaint or, alternatively, dismissing many of the grounds on which Chevron contends the Judgment is not recognizable or enforceable.

The LAP Representatives' motion is disposed of in a summary order of even date. This memorandum opinion deals with their contentions that Chevron is judicially estopped to deny that (1) the Ecuadorian legal system provides impartial tribunals and procedures compatible with due process of law, and (2) the Ecuadorian court had jurisdiction over Chevron.

The prior proceedings in this and related actions have been extensive, and the Court assumes familiarity with its previous decisions.[1]

---

[1]

These include the following:

Decisions in proceedings brought under 28 U.S.C. § 1782: *In re Chevron Corp.*, 709 F. Supp. 2d 283 (S.D.N.Y.) (*"Berlinger § 1782 I"*), aff'd sub nom., *Chevron Corp. v. Berlinger*, 629 F.3d 297 (2d Cir. 2010); *In re Chevron Corp.*, 736 F. Supp. 2d 773 (S.D.N.Y. 2010) (*"Berlinger § 1782 II"*); *In re Chevron Corp.*, 749 F. Supp. 2d 135 (S.D.N.Y.) (*"Donziger § 1782 I"*), *fuller opinion*, 749 F. Supp. 2d 141 (S.D.N.Y.) (*"Donziger § 1782 II"*), *on reconsideration*, 749 F. Supp. 2d 170 (S.D.N.Y.) (*"Donziger § 1782 III"*), aff'd sub nom., *Lago Agrio Plaintiffs v. Chevron Corp.*, 409 Fed. Appx. 393 (2d Cir. 2010).

Decisions in this case: *Chevron Corp. v. Donziger*, 768 F. Supp. 2d 581 (S.D.N.Y. 2011) (*"Donziger I"*) (granting preliminary injunction); *Chevron Corp. v. Donziger*, No. 11 Civ.

*Facts*

The judicial estoppel argument rests principally on statements made in the *Aguinda* litigation, a lawsuit brought in this Court in 1993 by many of the LAPs and others against Texaco, Inc. ("Texaco") – then an independent, publicly owned company – that was dismissed on the ground of *forum non conveniens* many years ago and, indeed, before the Lago Agrio litigation even began. Chevron never was a party to the *Aguinda* litigation. But in October 9, 2001, while the LAPs' appeal from the *forum non conveniens* dismissal of *Aguinda* was pending, Chevron acquired all of the common stock of Texaco. The LAP Representatives therefore attempt to impute to Chevron statements made by or on behalf of Texaco. In order to evaluate the LAP Representatives' contention, it therefore is helpful  to focus briefly on  three subjects: (1) the relevant facts concerning the *Aguinda* litigation, (2) the facts and allegations with respect to the relationship between Texaco and Chevron, and (3) the statements relied upon and the context in which they were

---

0691 (LAK), 2011 WL 979609 (S.D.N.Y. Mar. 7, 2011) ("*Donziger II*") (denying motion to transfer case to another judge); *Chevron Corp. v. Donziger*, No. 11 Civ. 0691 (LAK), 2011 WL 1408386 (S.D.N.Y. Apr. 6, 2011) ("*Donziger III*") (denying stay pending appeal and other relief); *Chevron Corp. v. Donziger*, ___ F. Supp. 2d ____, 2011 WL 1465679 (S.D.N.Y. Apr. 15, 2011) ("*Donziger IV*") (granting separate trial and expedited discovery on claim for declaratory judgment); *Chevron Corp. v. Donziger*, No. 11 Civ. 0691 (LAK), 2011 WL 1560926 (S.D.N.Y. Apr. 18, 2011) ("*Donziger V*") (denying motion to stay certain aspects of preliminary injunction pending appeal); *Chevron Corp. v. Donziger*, ___ F. Supp. 2d ___, No. 11 Civ. 0691 (LAK), 2011 WL 1747046 (S.D.N.Y. May 9, 2011) ("*Donziger VI*") (denying recusal motion); *Chevron v. Donziger*, No. 11 Civ. 0691 (LAK), 2011 WL 2150450 (S.D.N.Y. May 31, 2011) ("*Donziger VII*") (granting in part and denying in part motion to intervene); *Chevron Corp. v. Salazar*, No. 11 Civ. 3718 (LAK), 2011 WL 2326893 (S.D.N.Y. Jun. 14, 2011) ("*Salazar I*") (denying motion to stay pending intervention appeal); *Chevron Corp. v. Salazar*, No. 11 Civ. 3718 (LAK), 2011 WL 2581784 (S.D.N.Y. Jun. 24, 2011) ("*Salazar II*") (denying motion to stay discovery); *Chevron Corp v. Salazar*, ___ F. Supp. 2d ____, 2011 WL 2556046 (S.D.N.Y. Jun. 28, 2011) ("*Salazar III*") (denying motion to compel deposition ); *Chevron Corp v. Salazar*, No. 11 Civ. 3718 (LAK), 2011 WL 3628843 (S.D.N.Y.  Aug. 17, 2011) ("*Salazar IV*") (granting motion for leave to amend and granting in part and denying in part motion for judgment on the pleadings).

made.

*The* Aguinda *Litigation*

For present purposes, it suffices, in the main, to quote a summary by Judge Sand in a related case of principal events in the *Aguinda* litigation, a case in which Texaco was the only defendant and to which Chevron never was a party:

> "In 1993, an action captioned *Aguinda v. Texaco* was brought in the United States District Court for the Southern District of New York by a group of residents of the Oriente region of Ecuador (the "Aguinda Plaintiffs"), against Texaco, Inc., which has since become a wholly owned subsidiary of defendant ChevronTexaco by merger. The Aguinda Plaintiffs 'alleged that between 1964 and 1992 Texaco's oil operation activities polluted the rain forests and rivers in Ecuador . . . .' *Aguinda v. Texaco, Inc.*, 303 F.3d 470, 473 (2d Cir. 2002). They 'sought money damages under theories of negligence, public and private nuisance, strict liability, medical monitoring, trespass, civil conspiracy, and violations of the Alien Tort Claims Act,' as well as extensive equitable relief to redress contamination of the water supplies and environment, including: financing for environmental cleanup to create access to potable water and hunting and fishing grounds; renovating or closing the Trans-Ecuadorian Pipeline; creation of an environmental monitoring fund; establishing standards to govern future Texaco oil development; creation of a medical monitoring fund; an injunction restraining Texaco from entering into activities that risk environmental or human injuries, and restitution. *Id.* at 473-474.
>
> "The procedural history of the Aguinda litigation is outlined in detail in *Aguinda v. Texaco, Inc.,* 303 F.3d 470 (2d Cir. 2002), and *Jota v. Texaco, Inc.,* 157 F.3d 153 (2d Cir. 1998). Although it would be duplicative to recite that entire history here, a brief summary is appropriate. In November 1996, on Texaco's motion, the case was dismissed by the district court (Rakoff, J.) on grounds of *forum non conveniens,* international comity, and failure to join indispensable parties, specifically Ecuador and Petroecuador, whose presence was held to be necessary to effectuate the extensive equitable relief requested, but impossible to obtain in light of their sovereign immunity. *Aquinda v. Texaco, Inc.,* 945 F. Supp. 625 (S.D.N.Y.1996). The Second Circuit in 1998 vacated the dismissal and remanded the case for reconsideration, *Jota,* 157 F.3d at 163, holding that a *forum non conveniens* dismissal was inappropriate absent a requirement that Texaco consent to Ecuadorian jurisdiction, *id.* at 159; that the comity determination had potentially been undermined by Ecuador's change from opposing litigation of the issue in a United States court to supporting that litigation, *id.* at 160-161; and that the indispensable-party theory, while perhaps correct as to some of the relief requested,

was insufficient to support dismissal of the entire complaint, *id.* at 162. On remand, Texaco having consented to jurisdiction in Ecuador, the district court again dismissed the case on grounds of *forum non conveniens. Aguinda v. Texaco, Inc.,* 142 F. Supp.2d 534 (S.D.N.Y.2001). The Second Circuit affirmed. *Aguinda v. Texaco, Inc.,* 303 F.3d 470 (2d Cir.2002)."[2]

And lest there be any doubt, the consent to jurisdiction in Ecuador was made by Texaco and Texaco alone.[3]

*Texaco and Chevron*

For the sake of clarity, it is important to emphasize that the pleadings in this case are entirely devoid of any allegations that Texaco merged with or into Chevron or, indeed, any subsidiary of Chevron. Nor are there any allegations that would support piercing the corporate veil of Texaco, treating Chevron as Texaco's *alter ego,* or otherwise disregarding the separate corporate existence of Texaco.

It is well to focus also on the fact that public records establish that Texaco did not merge with or into Chevron. Rather, on October 9, 2001, a wholly owned subsidiary of Chevron merged with and into Texaco.[4] Texaco was the surviving entity.[5] In accordance with the merger

---

[2]

       *Republic of Ecuador v. ChevronTexaco Corp.,* 376 F. Supp.2d 334 (S.D.N.Y. 2005).

[3]

       *See, e.g., Aguinda v. Texaco,* 142 F. Supp.2d at 539 ("Texaco has now unambiguously agreed in writing to being sued on these claims (or their Ecuadorian equivalents) in Ecuador [and] to accept service of process in Ecuador").

[4]

       The Court takes judicial notice of the merger agreement (the "Merger Agreement"), which (a) was filed with the Securities and Exchange Commission as part of Amendment No. 4 to Form S-4 Registration Statement of Chevron, filed Aug. 27, 2001 ("S-4"), at 94, and (b) appears also as an Exhibit 1 to a declaration of Frank Soler, Texaco's corporate secretary ("Soler Decl."), in the *Republic of Ecuador* action. It is included in DI 43 in *Republic of Ecuador v. Chevron Corp.,* 99 Civ. 9958 (LBS) (S.D.N.Y. filed Feb. 26, 2010), and is reproduced at pages A1991-2059 of the appendix in *Republic of Ecuador v. Chevron Corp.,*

agreement, Chevron became the owner of all of the common stock of Texaco.[6]

*The Statements Relied Upon*

        The LAP Representatives' judicial estoppel argument is based on statements made in briefs and in affidavits and declarations by witnesses submitted in the *Aguinda* litigation in support of Texaco's efforts to obtain a *forum non conveniens* dismissal.[7]  All were to the effect that the Ecuadorian courts were neither corrupt nor unfair and that Texaco would satisfy any judgment for plaintiffs, reserving its right to contest its validity in the circumstances permitted by New York's Recognition of Foreign Country Money Judgments Act, a New York codification of the Uniform Act of the same name.[8]  Each and every one of these statements was made by Texaco.  Indeed, each was made before Chevron acquired its stock.

        The LAP Representatives rely also on Texaco's Second Circuit brief in *Aguinda*, in

---

[5]
    638 F.3d 384 (2d Cir. 2010).

    Both the Merger Agreement and the Certificate of Merger filed with the Delaware Secretary of State (Soler Decl. Ex. 4, DI 43, *Republic of Ecuador*), of which the Court also takes judicial notice, so reflect.

[6]
    Merger Agreement § 1.2.

[7]
    They ask that the Court judicially notice those documents, LAP Reps. Mem. [DI 157] 17-18, which it does.

[8]
    LAP Reps. Mem. 17-18, 23; *see also* Brief for Plaintiffs-Appellants 11-14, *Republic of Ecuador,* 684 F.3d 384.  (In reading the LAPs' brief in *Republic of Ecuador,* among other filings by them, it is important to recognize that the LAPs' paraphrasing and quotation of Texaco's statements to the district court in *Aguinda* frequently substituted "Chevron" for "Texaco" throughout, this behind the fig leaf of their assertion that Texaco had merged with Chevron.  *Id.* 1 n.1.  As is discussed below, that assertion was incorrect.)

which, they say, "Chevron repeated all these claims to the Second Circuit."[9]  Although that brief was filed after Chevron acquired Texaco's stock, Chevron was not a party to that case.

## *Discussion*

### A.   *Standard*

Rule 12(c) governs motions for judgment on the pleadings.[10]  When deciding a Rule 12(c) motion, the Court applies the same standard that would be applied to a Rule 12(b)(6) motion to dismiss.[11]  The Court therefore views the pleadings in the light most favorable to, and draws all reasonable inferences in favor of, the non-moving party.[12]  Judgment is appropriate if, based on the pleadings, the moving party is entitled to judgment as a matter of law.

### B.   *Judicial Estoppel*

The Supreme Court has defined judicial estoppel as follows:

"Where a party assumes a certain position in a legal proceeding, and succeeds in maintaining that position, he may not thereafter, simply because his interests have

---

[9]

LAP Reps. Mem. 17-18.

[10]

"After the pleadings are closed — but early enough not to delay trial — a party may move for judgment on the pleadings."  Fed. R. Civ. P. 12(c).

[11]

*See Hayden v. Paterson*, 594 F.3d 150, 160 (2d Cir. 2010) (citing *Johnson v. Rowley*, 569 F.3d 40, 43 (2d Cir. 2009)).  *See also Burnette v. Carothers*, 192 F.3d 52, 56 (2d Cir. 1999); *Nat'l Ass'n of Pharm. Mfgs., Inc. v. Ayerst Labs., Div. of/and Am. Home Prods. Corp.*, 850 F.2d 904, 909 n. 2 (2d Cir. 1988) ( "Pursuant to Fed. R. Civ. P. 12(h)(2) . . . a defense of failure to state a claim may be raised in a Rule 12(c) motion for judgment on the pleadings, and when this occurs the court simply treats the motion as if it were a motion to dismiss.").

[12]

*See Hayden*, 594 F.3d at 160; *Sheppard v. Beerman*, 18 F.3d 147, 150 (2d Cir. 1994); *Madonna v. United States*, 878 F.2d 62, 65 (2d Cir. 1989).

changed, assume a contrary position, especially if it be to the prejudice of the party who has acquiesced in the position previously taken by him."[13]

In our Circuit, it applies:

> "if: 1) a party's later position is 'clearly inconsistent' with its earlier position; 2) the party's former position has been adopted in some way by the court in the earlier proceeding; and 3) the party asserting the two positions would derive an unfair advantage against the party seeking estoppel."[14]

In addition, it is further limited to "situations where the risk of inconsistent results with its impact on judicial integrity is certain."[15]

The LAP Representatives' judicial estoppel argument fails at the outset because there is no inconsistency, clear or otherwise, between the positions Texaco took in the *Aguinda* case and Chevron's current contentions that (1) the Ecuadorian legal system did not provide impartial tribunals and procedures compatible with due process of law in the relevant time period, and (2) the Ecuadorian court did not have jurisdiction *over Chevron*. That, moreover, would be true even if Texaco's various statements, arguments and positions in *Aguinda* were entirely attributable to Chevron.

To begin with, the issue in *Aguinda* was whether Ecuador could provide an adequate forum for purposes of the *forum non conveniens* argument at the time the issue was argued in that case. While Texaco certainly argued throughout much of the 1990s and arguably as late as 2001 that it could, the issue here is different. The issue here is whether the Ecuadorian legal system – *in the*

---

[13]

    *New Hampshire v. Maine,* 532 U.S. 742, 749 (2001).

[14]

    *DeRosa v. National Envelope Corp.,* 595 F.3d 99, 103 (2d Cir. 2010).

[15]

    *Id.* (quoting *Uzdavines v. Weeks Marine, Inc.,* 418 F.3d 138, 148 (2d Cir. 2005), and *Simon v. Safelite Glass Corp.,* 128 F.3d 68, 72 (2d Cir. 1997) (internal quotation marks omitted).

*period 2003 through 2011, that in which the Lago Agrio was commenced and litigated* – provided impartial tribunals and procedures compatible with due process of law.  It is Chevron's contention that it did not as a result of events that occurred in and after 2004, whatever may have been the case previously.  Moreover, this Court already has found provisionally, on the motion for a preliminary injunction, that Chevron is likely to prevail on that contention.[16]  While Chevron ultimately may win or lose on that argument, the pleadings in this case establish no clear inconsistency between the argument Texaco made in the 1990s and up to 2001 and the argument Chevron now makes with regard to the period 2003 through 2011.

So far as the issue of personal jurisdiction is concerned, the substance of the commitment that Texaco made to the court in order to obtain a *forum non conveniens* dismissal of *Aguinda* was that Texaco could be sued in Ecuador on the claims previously asserted here in *Aguinda* and that it would accept service of process there.  But the LAPs did not sue Texaco in Ecuador in the Lago Agrio case.  They sued only Chevron.  Accordingly, the agreement that *Texaco* would consent to suit in Ecuador, even if that somehow bound Chevron, is not "clearly inconsistent" with an argument by Chevron that *Chevron* did not so consent and that the Ecuadorian court lacked jurisdiction over Chevron.

As there is no inconsistency – let alone a "clear inconsistency" with a certainty of an adverse "impact on judicial integrity" – Chevron would not be judicially estopped on either issue even if Texaco's prior statements and positions were attributable to it.

---

[16]    *Donziger I*, 768 F. Supp.2d at 616-20, 633-36.

C.    *The Attempt to Attribute Texaco's Positions to Chevron*

The result would be the same here even if there were a clear inconsistency between Texaco's prior positions and statements and those now taken by Chevron.

It is a bedrock principle of corporate law that shareholders – even sole shareholders – of a corporation ordinarily are not liable for the corporation's debts or obligations:

> "Unless the liability is expressly imposed by constitutional or statutory provisions, or by the articles of incorporation, or by special agreement of the shareholder, shareholders are not personally liable for debts of the corporation either at law or in equity, in the absence of fraud or the necessity of protecting a paramount equity. The general rule applies even in sole shareholder corporations with regard to a shareholder who controls and operates the corporation. The rule applies also to a corporate parent shareholder vis a vis the obligations of its subsidiary. The reason is that a corporation is a legal entity distinct from the members who compose it, and when it contracts a debt, it is the debt of this legal entity, the corporation, and not the debt of the individual members."[17]

Here, the operative legal documents in the public record establish, or at least appear to establish, that Texaco at all relevant times was, and remains, a legal entity separate and distinct from Chevron.  The fact that a Chevron subsidiary merged into Texaco did not make Chevron responsible for Texaco's obligations.[18]  Texaco's debts and obligations remain its own, not those of

---

[17]

13 WILLIAM MEADE FLETCHER, CYCLOPEDIA OF THE LAW OF CORPORATIONS § 6213 (current through Feb. 2011 update). *Accord, e.g., LeBoeuf, Lamb, Greene & MacRae v. Worsham,* 185 F.3d 61, 66 (2d Cir. 1999) ("under New York law (and probably the law of all states), [a] principal attribute of, and in many cases the major reason for, the corporate form of business association is the elimination of personal shareholder liability'") (quoting *We're Assocs. Co. v. Cohen, Stracher & Bloom, P.C.,* 65 N.Y.2d 148, 151 (1985)); *Fields v. Synthetic Ropes, Inc.,* 215 A.2d 427, 433 (Del. Sup. 1965)

[18]

As Texaco and the Chevron subsidiary that merged with and into Texaco both were Delaware corporations, the effect of the merger is governed by § 259 of the Delaware General Corporation Law, 8 DEL. C. § 259.  *See, e.g., United States v. Funds Held in the Name or for the Benefit of Wetterer,* 210 F.3d 96, 106 (2d Cir. 2000); *Scottish Air Int'l Inc. v. British Caledonian Group, PLC,* 81 F.3d 1224, 1234 (2d Cir. 1996).  It provides in substance that the merger extinguished the existence of the Chevron subsidiary and that "all debts, liabilities and duties" of both Texaco and the Chevron subsidiary "shall thenceforth

Chevron.  That Chevron since October 9, 2001 has owned all of Texaco's common stock is immaterial in the absence of some other appropriate basis for disregarding Texaco's separate corporate existence.[19]

To be sure the law recognizes various bases for disregarding a corporate entity and imposing its obligations upon the stockholder or stockholders.  But a litigant seeking to impose corporate obligations on a shareholder or shareholders must allege facts that, if proven, would justify disregard of the corporate entity.[20]  The LAP Representatives have alleged no such facts in this case. They certainly have not demonstrated, as they must in order to prevail on a motion for judgment on the pleadings on this theory, that the pleadings unequivocally establish facts that warrant disregarding Texaco's separate corporate existence and imputing its statements and positions to Chevron.[21]

No doubt recognizing this, the LAP Representatives fall back upon the assertion that

---

attach to said surviving or resulting corporation [Texaco], and may be enforced against it to the same extent as if said debts, liabilities and duties had been incurred or contracted by it." Thus, by virtue of the merger, Texaco succeeded to the debts and obligations of the Chevron subsidiary that merged into it, not the other way around.  In fact, the LAPs' Second Circuit brief in *Republic of Ecuador* flatly asserted that "in the cae of a merger the corporation which survives is liable for the debts and contracts of the one which disappears."  Brief for Plaintiffs-Appellants 1 n.1, *Republic of Ecuador,* 638 F.3d at 384 (internal quotation marks omitted).  Quite so.  But the corporation that disappeared was not Texaco.

[19]

    13 FLETCHER, *supra* §§ 6213, 6222.

[20]

    *See, e.g., Trust v. Kummerfeld,* 153 Fed. Appx. 761, 763 (2d Cir. 2005); *Scarbrough v. Perez,* 870 F.2d 1079, 1083-84 (6th Cir. 1989); *Wallace ex rel. Cencom Cable Income Partners II, Inc., L.P. v. Wood,*752 A.2d 1175, 1184 (Del. Ch. 1999).

[21]

    *E.g., Sellers v. M.C. Floor Crafters, Inc.,* 842 F.2d 639, 642 (2d Cir. 1988) ("Judgment on the pleadings is appropriate where material facts are undisputed and where a judgment on the merits is possible merely by considering the contents of the pleadings. ")

the Court of Appeals, in *Republic of Ecuador v. Chevron Corp.*,[22] ruled that Chevron bound itself

to Texaco's promises following the acquisition because Texaco became Chevron's "predecessor[]

in interest" and "lawyers from Chevron-Texaco appeared in this Court and reaffirmed" them.  There

is, to be sure, language to that effect in a footnote, including the words quoted in the preceding

sentence.[23]  But they clearly were *dicta* and, even if they had been a holding, would not be binding

---

[22]

    638 F.3d 384 (2d Cir. 2010).

[23]

    *Id.* at 398 n.3.

    While it need not and perhaps cannot be determined on the record before this Court, it appears that the language of the footnote is the product of inaccurate statements by all counsel, some in *Republic of Ecuador* and one during the second appeal in *Aguinda*.

    The LAPs and, to some extent, the Republic of Ecuador repeatedly asserted in their *Republic of Ecuador* appellate briefs that "Chevron and Texaco 'merged'" and even claimed that Chevron had been the surviving entity in the merger.  *E.g.,*Brief for Plaintiffs-Appellants [LAPs] Brief 1 n.1; Brief and Special Appendix for Petitioner-Appellant [Republic of Ecuador] 9 n.4.  Indeed, the LAPs' opening brief asserted that:

        "Chevron Corporation, Texaco, Inc., ChevronTexaco, and Texaco Petroleum Company are for all relevant purposes the same entity, which plaintiffs will refer to as 'Chevron.' As Defendants informed this Court in 2001, 'Texaco merged with Chevron Inc. on October 9, 2001.' A-187. Chevron even asked the Court to take "judicial notice" of this fact. *Id.*; *see* A-631, A-820. '[I]n the case of a merger the corporation which survives is liable for the debts and contracts of the one which disappears.'" Brief of Plaintiff-Appellants, *Republic of Ecuador,* 638 F.3d 384, at 1 n.1 (citing *John Wiley & Sons, Inc., v. Livingston*, 376 U.S. 543, 550-51 n. 3 (1964)).

    But the LAPs and the Republic of Ecuador were not alone in creating the apparent confusion.  Texaco's brief to the Second Circuit in *Aguinda* contained the erroneous or, at least, probably erroneous statement that "[a]s generally known (and thus this Court may take judicial notice), Texaco merged with Chevron Inc. on October 9, 2001."  Brief for Defendant-Appellee 10, *Aguinda v. Texaco, Inc.*, 303 F.3d 470. Indeed, it was that statement that the LAPs cited for the proposition that Texaco had merged with Chevron.

    These statements that Texaco merged with Chevron and the implication or argument that Chevron was the surviving entity both are or, at least, appear to be flatly inconsistent with the operative legal documents, which are matters of public record, proper subjects of judicial notice, and appeared in the record in *Republic of Ecuador.* Nor could the apparently erroneous statement in Texaco's *Aguinda* brief judicially estop Chevron from asserting that

13

here.

        *Republic of Ecuador* was an action by that nation and the LAPs to stay an arbitration

brought by Chevron against the Republic (the "ROE") in which Chevron claimed that any judgment

against it in the Lago Agrio litigation would violate the terms of a prior settlement between the ROE

and a Texaco subsidiary and that ROE had interfered improperly with the Lago Agrio case (the "BIT

Arbitration").  Among other arguments, the ROE and the LAPs contended that Chevron was

judicially estopped to maintain the BIT Arbitration by "Texaco's promises [in *Aguinda*] to submit

to Ecuadorian jurisdiction and satisfy any Ecuadorian judgment."[24]  The Circuit held that judicial

estoppel did not apply because there was no inconsistency between the positions previously taken

--------------------

Texaco did not merge with and into Chevron because the *Aguinda* court did not adopt it, explicitly or implicitly, in affirming the *forum non conveniens* dismissal.

Finally, it appears that the "lawyers from Chevron-Texaco" referred to in the panel's footnote were Messrs. Veiga and Timms, who had been with Texaco or Texaco affiliates for years before the Chevron transaction.  Even if they were employees of Chevron rather than Texaco when Texaco's brief was filed in *Republic of Ecuador*, it is not self evident that statements made or adopted by them in their capacities as litigation counsel for Texaco in a case in which Chevron was not even a party could bind Chevron in the absence of some basis for piercing the Texaco's corporate veil.  *Cf. In re Teleglobe Comm'ns Corp.*, 493 F.3d 345, 371 (3d Cir. 2007) ("It is a bedrock principle of corporate law in Delaware and elsewhere that courts must respect entity separateness unless doing so would work inordinate inequity.").

Certainly an agent who acts for two or more different principals does not bind all by a statement made within the scope of the agent's employment for only one of them.  *See Koreska v. United Cargo Corp.*, 23 A.D.2d 37, 40-41 258 N.Y.S.2d 432, 436 (1st Dep't 1965); *see also Bernstein for and on Behalf of Com'r of Banking and Ins. of State of Vt. v. Centaur Ins. Co.*, 644 F. Supp. 1361 (S.D. N.Y. 1986) ("an agent may act as one party's agent in respect to one matter while representing another party in a separate matter").  The decision in *Republic of Ecuador* gives no indication that the panel ever considered that point, resting instead on the assumption that Chevron was a successor in interest to Texaco, a belief that appears to have rested on incorrect statements by all parties.

[24]

*Republic of Ecuador*, 638 F.3d at 398.

14

by Texaco in the *Aguinda* case and those asserted by Chevron in the BIT Arbitration.[25]   The statement upon which the LAP Representatives rely here appeared in a footnote.

Inasmuch as there was no inconsistency between the positions taken in *Aguinda* and in the BIT Arbitration, the panel's remarks in the footnote were unnecessary to the result and therefore *dicta.*   While this Court always gives respectful attention even to *dicta* of higher courts, it is not bound by them.   Nor is the footnote in *Republic of Ecuador* binding under the doctrine of issue preclusion because it was not necessary to support the result.[26]   Whether Chevron is bound by Texaco's statements – either because Texaco's corporate veil should be pierced or for some other reason – and, if so, the significance of such a conclusion cannot be determined, at least not favorably to the LAP Representatives, on this motion.

## Conclusion

It may be, contrary to all of the operative legal documents on the public record, that Texaco merged with and into Chevron and that Chevron therefore is bound by the statements Texaco made in obtaining the *forum non conveniens* dismissal of the *Aguinda* case.   Even if, as seems likely, that is not the case, there may be some other factual and legal basis for disregarding Texaco's corporate existence and holding that Chevron is bound by the legal consequences of those statements by Texaco.

---

[25]

*Id.* at 397-99.

[26]

*E.g., Grieve v. Tamarin,* 269 F.3d 149, 153 (2d Cir. 2001) ("collateral estoppel (or 'issue preclusion') bars relitigation of a specific legal or factual issue in a second proceeding where (1) the issues in both proceedings are identical, (2) the issue in the prior proceeding was actually litigated and actually decided, (3) there was [a] full and fair opportunity to litigate in the prior proceeding, and (4) *the issue previously litigated was necessary to support a valid and final judgment on the merits*") (internal quotation marks and citations omitted) (emphasis added).

But this is a motion by the LAP Representatives for judgment on the pleadings.  It is impossible to resolve these issues on the basis of the pleadings alone or even on the basis of the pleadings and the facts judicially noticed.  The facts are disputed.  Accordingly, to the extent that LAP Representatives' motion for judgment on the pleadings rests on their judicial estoppel claims, it must be denied.

        SO ORDERED.

Dated:        August 31, 2011

 

 

                                       Lewis A. Kaplan
                                   United States District Judge

                   (The manuscript signature above is not an image of the signature on the original document in the Court file.)