UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| CHEVRON CORPORATION,<br>       Plaintiff,<br><br>-against-<br><br>MARIA AGUINDA SALAZAR, et al.<br>       Defendants.<br><br>-and-<br><br>STEVEN DONZIGER, et al.,<br><br>       Intervenors. | Case No. 1:11-Civ. 03718 (LAK) |

**DONZIGER'S RECUSAL MOTION**

NOTICE OF MOTION

Donziger[1] moves the Court, pursuant to 28 U.S.C. § 455 and the Court's inherent discretion, for an order recusing the district judge from further involvement in this case.

MEMORANDUM OF LAW

**The Court should recuse itself from further involvement in this case.**

In this motion addressed to the conscience of the Court, Donziger asks the Court to promote both the reality and the appearance of justice by recusing itself from further involvement in this case.[2]

The Court has not hesitated to express either its antipathy to Donziger or its partiality to Chevron's overreaching legal arguments. The Second Circuit has now repudiated those arguments in an order vacating this Court's preliminary injunction and in a published decision requiring this Court to dismiss the related declaratory-judgment action "in its entirety."[3]

On March 7, 2011, this Court issued a preliminary-injunction order invoking New York's Foreign Money-Judgments Recognition Act[4] as authority for barring the LAPs[5] and Donziger from taking any steps to enforce the Ecuadorian court's judgment against Chevron anywhere in the world. Chevron's lawyers proffered a "misleading characterization" of cases involving the Recognition Act,[6] persuading the Court that Chevron could wield the Act as an offensive

---

[1] "Donziger" refers collectively to movants Steven Donziger, The Law Offices of Steven R. Donziger, and Donziger & Associates PLLC.

[2] Donziger acknowledges that the Second Circuit denied the LAPs' petition for a writ of mandamus recusing this Court. *See In re Naranjo* 11-2259-op, 2d Cir. Dkt. 75. Donziger and the Lago Agrio plaintiffs have requested recusal and/or reassignment on several occasions. *See Chevron Corp. v. Donziger,* S.D.N.Y. No 11-cv-0691-LAK, Dkt. 76 at 3-4, Dkt. 285 at 15-35, Dkt. 286 at 1-9, Dkt. 305 at 3-6, 8-12; *Chevron Corp. v. Donziger*, S.D.N.Y. No. 11-2260-cv, Dkt. 93 at 46-48; *Chevron Corp. v. Naranjo,* Second Circuit No. 11-1150-cv(L), Dkt. 159 at 66-69, Dkt. 163 at 6, 91, Dkt. 374 at 18-20, Dkt. 377 at 46, Dkt. 415 at 1. Each of those prior filings is incorporated by reference herein.

[3] *Chevron Corp. v. Naranjo*, No. 11-1150-cv(L), slip op. at 30 (2d Cir. Jan. 26, 2012) ("*Naranjo*").

[4] N.Y. C.P.L.R. §§ 5301-5309 ("Recognition Act" or "Act").

[5] "LAPs" refers to the Lago Agrio Plaintiffs.

[6] *Naranjo*, slip op. at 17 n.14 (observing that Chevron relied on one key precedent without discussing its facts or noting its procedural differences from this case, and stating that Chevron gave "a misleading characterization" of another case on which it relied).

weapon in its "preemptive, global anti-enforcement effort."[7] Chevron's lawyers thus encouraged the Court to assert powers that it did not have, including the powers to

- set itself up as "a transnational arbiter to dictate to the entire world which judgments are entitled to respect and which countries' courts are to be treated as international pariahs";[8]
- take actions that "risk[ed] disrespecting the legal system not only of [Ecuador], but also those of other countries" that might be asked to enforce the Ecuadorian judgment;[9]
- turn the Recognition Act "on its head" by transforming it from "a law designed to facilitate 'generous' judgment enforcement" into "a regime by which such enforcement could be preemptively avoided";[10] and
- issue a sweeping and unprecedented global anti-enforcement injunction that had "no legal basis."[11]

Rejecting everything that this Court had done in the declaratory-judgment action, the Second Circuit vacated the injunction and concluded: "The LAPs hold a judgment from an Ecuadorian court. They may seek to enforce that judgment in any country in the world where Chevron has assets."[12] Although the appeals court did not grant the LAPs' request that the declaratory-judgment action be reassigned to a different judge upon remand, it explained that this was because there was nothing left to reassign: lacking any legal basis, the action could only be dismissed.[13]

With the same zeal that it adopted Chevron's misleading characterizations of the law, this Court embraced Chevron's misleading characterizations of Donziger. The Court's injunction

---

[7] *Naranjo*, slip op. at 15.

[8] *Id*. at 21.

[9] *Id*. at 23.

[10] *Id*. at 19.

[11] *Id*. at 20.

[12] *Id*. at 27.

[13] *Id*. at 13-14 n.11.

order referred to Donziger by name 190 times and located him at the very center of an alleged conspiracy to subvert the Ecuadorian justice system and deny justice to Chevron. The Court called Donziger "the fulcrum of the entire effort to use the Lago Agrio litigation to obtain a very large payment from Chevron";[14] "the field general" in a political battle that was played out through a legal case; the man who "orchestrated a campaign to intimidate the Ecuadorian judiciary";[15] and a miscreant who "'attempted to . . . procure and package [fraudulent] 'expert' testimony for use in Ecuador.'"[16] Earlier the Court had opined that "Donziger appear[ed] to have played a central role in questionable aspects of the Lago Agrio litigation and related events"[17] and stated orally that, by using American legal expertise to assist the LAPs, "Mr. Donziger is trying to become the next big thing in fixing the balance of payments deficit. I got it from the beginning."[18] The Court also displayed its contempt for Donziger procedurally, by leaving him almost no time to respond to Chevron's preliminary-injunction motion and by severing the declaratory-judgment action and then ejecting Donziger from the case, leaving him with only minimal rights of intervention.[19]

---

[14] *Chevron Corp. v. Donziger,* S.D.N.Y. No 11-cv-0691-LAK, Dkt. 181 at 14.

[15] *Id.* at 35.

[16] *Id. at 15* (footnote, citation, and internal brackets omitted).

[17] *In re Chevron Corp.*, 749 F. Supp. 2d 141, 144 (S.D.N.Y.), *aff'd*, 409 F. App'x 393 (2d Cir. 2010).

[18] *In re Chevron Corp.,* 10-MC-00002-LAK (S.D.N.Y.), September 23, 2010 Hearing Transcript at 78:11-13.

[19] The Court's animus toward Donziger warrants self-recusal even if that animus has no "extrajudicial" source. "The most critical factor is not the ***source*** of the judge's prejudicial knowledge or bias, but rather the judge's 'inability to render fair judgment.'" *In re Sam M. Antar*, 71 F.3d 97, 101-02 (3d Cir. 1995) (emphasis added) (citation omitted), *overruled on other grounds by Smith v. Berg,* 247 F.3d 532, 534 (3d Cir. 2001). Thus, even where the judge's bias or partiality is based solely on information learned during the course of judicial proceedings, recusal is warranted where the court "display[s] a deep-seated favoritism or antagonism that would make fair judgment impossible." *Liteky v. United States*, 510 U.S. 540, 555 (1994); *see also Sentis Group v. Shell Oil Co*., 559 F.3d 888, 904-05 (8th Cir. 2009) (holding that district judge had exhibited enough antagonism to require reassignment under 28 U.S.C. § 455(a) standard, given the court's "apparent distrust of Plaintiffs as manifested early in the litigation"; the court's uncritical adoption of the adversary's version of the facts; and the court's antagonism toward and impatience with the petitioner in court); *In re Int'l Bus. Machs. Corp.*, 45 F.3d 641, 644-45 (2d Cir. 1995) (granting recusal on writ of mandamus where district judge expressed antagonism, both in court and in public statements, toward parties over their stipulated dismissal of case); *Johnson v. Sawyer*, 120 F.3d 1307 (5th Cir. 1997); *Haines v. Liggett Group Inc.*, 975 F.2d 81, 97-98 (3d Cir. 1992).

These attacks on Donziger will haunt the remaining proceedings, casting doubt on the fairness, impartiality, and propriety of everything the Court does from here on out. Donziger therefore requests that the Court consult its conscience and ask itself whether it can both be and appear to be fair and impartial when adjudicating Chevron's remaining claims against him.

No matter how neutral the Court tries to be, rulings for Chevron will be viewed as payback for the result that the LAPs and Donziger obtained on appeal, while rulings for the LAPs and Donziger will be viewed as payback for Chevron's having misled the Court and thus harmed its reputation in a published decision. Holding onto the case will, itself, be viewed as the Court's attempt to prove that it was right all along, whether about Donziger, or about the integrity of the Ecuadorian judicial system, or about the need to regard foreign judgments from developing countries with skepticism.

Just as the courts of other nations can be trusted to decide the enforceability of the Ecuadorian judgment, other judges of this court can be trusted to guide this case to a just and equitable conclusion. This Court must relax its grip. It must let go of this case. It cannot in good conscience do otherwise.

Dated: February 17, 2012

Respectfully submitted,

By: *s/ John W. Keker*
JOHN W. KEKER (admitted *pro hac vice*)
KEKER & VAN NEST LLP
710 Sansome Street
San Francisco, CA 94111-1704
Telephone: 415.391.5400
Facsimile: 415.397.7188
Email:    epeters@kvn.com
Email:    jkeker@kvn.com
Email:    jlittle@kvn.com

**Attorneys for** STEVEN DONZIGER, THE LAW OFFICES OF STEVEN R. DONZIGER AND DONZIGER & ASSOCIATES, PLLC

621779.01

4

Dated: February 17, 2012

By: *s/James E. Tyrell, Jr.*
James E. Tyrrell, Jr.
PATTON BOGGS LLP
The Legal Center
One Riverfront Plaza
Newark, NJ  07102710 Sansome Street
Tel:       (973) 848-5600
Fax:       (973) 848-5601

**Attorney for Ecuadorian Plaintiffs**