**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

CHEVRON CORPORATION,

                Plaintiff,

           v.

STEVEN DONZIGER, et al.,

                Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

11 Civ. 0691 (LAK)
11 Civ. 3718 (LAK)

**PLAINTIFF CHEVRON CORPORATION'S**
**MEMORANDUM OF LAW IN SUPPORT OF ITS APPLICATION**
**BY ORDER TO SHOW CAUSE WHY THIS COURT SHOULD NOT**
**EXONERATE CHEVRON'S $21.8 MILLION BOND**

GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, New York 10166-0193
Telephone:  212.351.4000
Facsimile:  212.351.4035

*Attorneys for Plaintiff Chevron Corporation*

# TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ................................................................................... 1

BACKGROUND ......................................................................................................... 3

ARGUMENT ............................................................................................................ 12

This Court Should Exonerate Chevron's $21.8 Million Bond ................................. 12

    A.    The Court Has the Authority to Exonerate the Bond It Ordered Posted. ............ 12

    B.    The Narrow Purpose of the Bond Was to Protect the Lago Agrio Plaintiffs
        Against Damages Resulting From Delay in Enforcement of the Lago
        Agrio Judgment............................................................................................ 13

    C.    The Lago Agrio Plaintiffs Incurred No Damages Because the Injunction
        Did Not Cause Any Delay of Enforcement. ....................................... 14

    D.    Patton Boggs Should Recover Nothing From Chevron's Bond ......................... 15

    E.    The Court Should Exonerate the Entire $21.8 Million Bond. ............................ 18

CONCLUSION.......................................................................................................... 19

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Adam v. Jacobs*,
   950 F.2d 89 (2d Cir. 1991) ................................................................................... 16

*AEP Energy Servs. Gas Holding Co. v. Bank of Am., N.A.*,
   626 F.3d 699 (2d Cir. 2010) ................................................................................. 16

*Babi-Ali v. City of New York*,
   979 F. Supp. 268 (S.D.N.Y. 1997) ...................................................................... 18

*Blumenthal v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*,
   910 F.2d 1049 (2d Cir. 1990) ............................................................................... 15

*Chevron Corp. and Texaco Petroleum Co. v. Republic of Ecuador*,
   PCA Case No. 2009-23, Second Interim Award on Interim Measures (Feb. 16, 2012) .......... 11

*Chevron Corp. v. Donziger*,
   768 F. Supp. 2d 581 (S.D.N.Y. 2011) ...................................................... 4, 12, 14

*Chevron Corp. v. Naranjo*,
   --- F.3d ---, 2012 WL 232965 (2d Cir. Jan. 26, 2012) ........................................ 7

*City of New York v. Exxon Corp.*,
   932 F.2d 1020 (2d Cir. 1991) ............................................................................... 16

*Crown Wisteria, Inc. v. F.G.F. Enters.*,
   562 N.Y.S.2d 616 (App. Div. 1990) .................................................................... 18

*In re Yaiguaje*, No. 11-mc-80087-CRB (N.D. Cal. Apr. 27, 2011) ............................................ 9

*ING Fin. Partners, Inc. v. Johansen*,
   2007 WL 3224743 (D. Minn. Oct. 29, 2007) ...................................................... 12

*Monroe Div., Litton Bus. Sys., Inc. v. De Bari*,
   562 F.2d 30 (10th Cir. 1977) ............................................................................... 18

*Nat'l Equip. Rental, Ltd. v. Fowler*,
   287 F.2d 43 (2d Cir. 1961) ................................................................................... 16

*Nokia Corp. v. InterDigital, Inc.*,
   645 F.3d 553, 561 (2d Cir. 2011) ........................................................ 12, 13, 17, 18

**Rules**

Fed. R. Civ. P. 65 ...................................................................................................... 12, 13

Fed. R. Civ. P. 65(c) ................................................................................................. 4, 13

N.Y. C.P.L.R. §§ 5301–5309 ....................................................................................... 7

## PRELIMINARY STATEMENT

Plaintiff Chevron Corporation respectfully moves by order to show cause to exonerate the $21.8 million bond that Chevron posted, pursuant to this Court's preliminary injunction order. Such relief is appropriate because the LAPs sustained no damages as a result of that injunction.

In granting Chevron's preliminary injunction motion, this Court ordered Chevron to post a bond to protect the LAPs in the event they suffered damages if it were later determined that the LAPs should not have been enjoined.  To recover on the bond, the LAPs would have to demonstrate harm from delayed enforcement of their fraudulent Ecuadorian judgment caused by the injunction.  The Court calculated the amount of the bond required to cover the interest that would be accrued if enforcement of the judgment were delayed six months.

The Second Circuit vacated the injunction several months later based on a legal issue—a determination that the New York statute could and did trump the plain terms of the federal Declaratory Judgment Act.  Yet during those several months, Defendants stated repeatedly to this Court and the Second Circuit that the Ecuadorian judgment was unenforceable and would remain so pending the Ecuadorian intermediate appellate court's resolution—which did not occur until long after the Second Circuit vacated the injunction.  By Defendants' own admission, their judgment was unenforceable for the entire period the injunction was in place.  Thus, Defendants could not have suffered any cognizable harm from the injunction.  This Court should therefore exonerate the full amount of Chevron's bond.

While often the exoneration of a bond is a relatively perfunctory matter, Chevron moves by order to show cause because Patton Boggs LLP filed, on February 15, an action against Chevron in the District of New Jersey seeking to collect on the bond and threatening to obtain an order from that Court to prevent this Court's exoneration of the bond it ordered.  On February 27,

Patton Boggs purported to effect service on Chevron, and Chevron must now answer or otherwise respond to that Complaint by April 2. *See Patton Boggs LLP v. Chevron Corporation*, Case No. 33-av-00001 (the "Patton Boggs Action"), Declaration of Randy M. Mastro in Support of Chevron Corporation's Motion by Order to Show Cause ("Mastro Dec."), Ex. 1, at ¶¶ 62, 65. Patton Boggs filed its action "pro se"—*not* on behalf of its clients. The Patton Boggs Action is an obvious attempt to circumvent this Court's jurisdiction. Patton Boggs has purported to represent the LAPs against Chevron in multiple fora—including in this action (ghostwriting briefs and even recently appearing, albeit briefly), as well as in appealing this Court's orders to the Second Circuit. Yet Patton Boggs filed its New Jersey federal action on its own behalf, seeking to recover for itself alone the $21.8 million bond this Court ordered to protect the LAPs, not the lawyers who purport to represent their interests. Patton Boggs also seeks to recover its supposedly unpaid attorneys' fees generated in opposing Chevron in this action and other purported damages flowing from what it calls this Court's "frivolous" injunction.[1] *Id.* at ¶¶ 63, 37. The Patton Boggs action is baseless and fatally defective, and Patton Boggs should not be permitted to share in any proceeds from this bond or prevent this Court from interpreting and applying its own order issued in this case. Accordingly, Chevron now files this motion to exonerate the bond and simultaneously moves, in the District of New Jersey, to transfer the New Jersey federal action to here.[2]

    In short, Chevron seeks to proceed by order to show cause, rather than noticed motion,

---

[1]    Patton Boggs also asserts a claim for "malicious prosecution" based on the same alleged acts, apparently as a vehicle for attempting to claim "damages" in excess of the amount of the bond. To the extent that Patton Boggs intends to argue that their assertion of this claim in another jurisdiction should somehow affect this Court's analysis of whether it should exonerate the bond, the Court may properly consider the claim's lack of merit. To the extent that Patton Boggs declines to make any such showing in this Court in response to an order to show cause from this Court, Patton Boggs's assertion of a "malicious prosecution" claim is immaterial to resolution of the present motion.

[2]    Chevron's transfer motion is unlikely to be resolved before it will have to answer or otherwise respond to Patton Boggs's complaint on April 2.

for several reasons.  First, a prompt decision by this Court will conserve the resources of this Court, the District Court in New Jersey, and the parties, and preserve this Court's jurisdiction to determine the status of its own order.  Second, the Patton Boggs Action expressly seeks from the New Jersey Court an order to prevent this Court from determining the appropriate disposition of the bond posted in this action.  *Id.*, ¶ 65.  The Patton Boggs Action thus threatens to prejudice the interests of the parties before this Court—including the interests of Patton Boggs's own clients— to the extent any of the parties here claims an interest in recovering on any portion of the injunction bond posted pursuant to this Court's order.  And it threatens Chevron's interest in not being subjected to multiple, potentially conflicting rulings in multiple jurisdictions considering the same issues.  Third, only this Court is in a position to order all those who may claim any interest in the bond, including Patton Boggs *and* the parties here, to show cause why the bond should not be exonerated.[3]  Because Defendants here are not parties to the Patton Boggs Action, only this Court can do complete justice to all the interested, indispensable parties in determining whether to exonerate its own bond order, making this Court's prompt action desirable.[4]

## BACKGROUND

This Court is familiar with the facts of this case, which are covered in detail in prior briefing and in the Amended Complaint.  Dkts. 4-58, 91-111, 283.  Chevron seeks relief against

---

[3]      If Chevron were to proceed by motion, Patton Boggs, which is not a party to this action, might contend that it has not been compelled or have any obligation to appear and assert any rights it claims.  Indeed, even though it has a New York office (headed by Tyrrell) and has represented the LAPs in the Second Circuit, Patton Boggs intention-ally tried to avoid appearing before this Court, preferring to ghostwrite filings for other counsel.  *See* Mastro Dec., Ex. 9 at 21:10–12, 21:20–21.  An order to show cause requiring interested parties to file a response to this Applica-tion can require that firm's appearance.

[4]      Chevron has filed and served this Application electronically in conformity with the Court's order in this case regarding proposed orders to show cause, and is serving a copy on Patton Boggs by means of email and hand delivery as well.  Out of an abundance of caution, Chevron is filing this motion in both Case No. 11 Civ. 0691 (the "RICO Action") and the severed declaratory judgment action, Case No. 11 Civ. 3718 (the "Count 9 Action").  Chev-ron posted its bond in Case No. 11 Civ. 0691 before the Court severed the cases.  This Court's severance order stat-ed that "[a]ll decisions, orders and rulings and other determinations heretofore made in 11 Civ. 0691 (LAK), includ-ing without limitation the … preliminary injunction … shall remain in effect in the Count 9 Action."  Dkt. 328, p. 2 (May 31, 2011).  All docket references are to the RICO Action unless otherwise indicated.

the Defendants' extortionate scheme, including their corrupt actions to procure and exploit the fraudulent $18 billion judgment issued against Chevron in Ecuador.

**TRO and Preliminary Injunction.**  On February 8, 2011, this Court issued a temporary restraining order ("TRO"), preventing Defendants from seeking to enforce outside of Ecuador the then-imminent judgment in the fraudulent Ecuadorian lawsuit against Chevron (issued six days later, on February 14, 2011).  *See Chevron Corp. v. Donziger*, 768 F. Supp. 2d 581, 626 (S.D.N.Y. 2011).

On March 7, 2011, this Court granted Chevron's motion for a preliminary injunction, barring Defendants from, among other things, commencing, prosecuting, advancing in any way, or receiving benefit from any action or proceeding, outside the Republic of Ecuador, for recognition or enforcement of the Ecuadorian judgment.  *Id.* at 608.  This Court found "ample evidence of fraud," virtually all of which is "undisputed," and "no meaningful prospect that Chevron ever could collect any damages" or "recover any amounts paid in satisfaction of the Ecuadorian judgment in the event it ultimately prevailed here."  *Id.* at 628, 636, 655.

With respect to the imminence of harm to Chevron, the Court correctly observed that "[u]nder Ecuadorian law, a lower court's judgment is stayed during the pendency of an initial appeal."  *Id*. at 621.  Nonetheless, "[o]nce Chevron appeals, the appellate court may rule at any time, and there is good reason to believe that it will do so quickly in this case."  *Id*.

This Court ordered Chevron to post a bond as security in accordance with Federal Rule of Civil Procedure 65(c).  The LAPs requested that the Court fix the amount of the bond in the *billions* of dollars, but the Court denied this request because "the purpose of the bond requirement is not to secure the collectability of [the Ecuadorian] judgment . . . . It is simply to protect the LAP Representatives against any injury that they may suffer if they are enjoined for a period

from seeking to enforce that judgment and the injunction ultimately proves to have been inappropriate—in other words, to ensure payment of any damages caused by the delay in enforcement." *Id*. at 657.  The Court further explained:  "The only possible damage apparently would be a function of the time value of money—the loss of any funds that ultimately may properly be collectible for the period during which the preliminary injunction is in effect." *Id*.  Accordingly, the Court ordered Chevron to provide a bond in the amount of $21,800,000 (or six months' worth of interest on the $18.2 billion judgment) and "to abide further order of the Court." *Id*.

Chevron posted the full bond on March 11, 2011.  *See* Dkt. 198.

**Second Circuit Appeal and Order Vacating Preliminary Injunction.**  On May 12, 2011, the Second Circuit Court of Appeals granted Defendants' motion for a partial stay—narrowing the injunction to prevent Defendants only from "commencing, prosecuting, or receiving benefit from recognition, enforcement, or pre-judgment seizure or attachment proceedings." Mastro Dec., Ex. 2 at 1.

The LAPs' merits brief in the Second Circuit (filed by Patton Boggs) argued that jurisdiction was lacking because, among other reasons, the Ecuadorian "[j]udgment is and will remain non-final and *unenforceable* in Ecuador while the appeal in Ecuador is pending."  Mastro Dec., Ex. 3 at 54 (emphasis added).  Similarly, Defendant Donziger's merits brief stated that "the pendency of Chevron's *de novo* appeal in Ecuador means that any claimed harm is not imminent and in fact is mere speculation. . . . [T]he judgment will remain *unenforceable* at least until the intermediate Ecuadorian appeals court renders its decision."  Mastro Dec., Ex. 4 at 54 (emphasis added).

On September 16, 2011, the Second Circuit heard oral argument on Defendants' appeal. Counsel for the LAPs (James Tyrrell of Patton Boggs) represented Defendants' position as to the

*un*-enforceability of the Ecuadorian judgment as follows:  "The judgment *cannot be enforced* until the final disposition of the Ecuadorian intermediate court and a decision by Chevron not to appeal further, or if a bond is required, not to post the bond."  Mastro Dec., Ex. 5 at 23:15–21 (emphasis added).  In a subsequent letter to the Second Circuit panel, Mr. Tyrrell confirmed that the LAPs "will stipulate not to commence pre-judgment attachment or enforcement proceedings anywhere in the world prior to entry of a ruling by the Provincial Court of Sucumbíos [the intermediate appellate court] on the *de novo* appeal currently pending before that court in Ecuador."  Mastro Dec., Ex. 6 at 1.

The Second Circuit issued a summary order on September 19, 2011, vacating this Court's preliminary injunction and staying proceedings in Chevron's severed Count 9 Action.  Mastro Dec., Ex. 7 at 2.  The summary order did not mention the RICO Action.

**Ecuadorian Appellate Decision.**  On January 3, 2012, a panel of temporary judges presiding in the Provincial Court of Sucumbíos ("Ecuadorian appellate court") affirmed the $18.2 billion judgment against Chevron.  The Ecuadorian appellate court refused to consider the extensive evidence of fraud permeating the entire case because, among other reasons, "the same accusations are pending resolution before authorities of the United States of America due to a complaint that has been filed by . . . Chevron, under what is known as the RICO act, and this Division has no competence to rule on the conduct of counsel, experts or other officials or administrators and auxiliaries of justice, if that were the case."  Mastro Dec., Ex. 8 at 10.  Following Defendants' motion for "clarification" of this ruling, the Ecuadorian appellate court attempted to provide Defendants with a post hoc fig leaf stating that it really had reviewed the fraud evidence, but nonetheless reiterated that it "stays out of these accusations, preserving the parties' rights to . . . continue the course of the actions that have been filed in the United States of America."

Mastro Dec., Ex. 14 at 4.  "[I]t is obvious," the court stated, "that it was not its responsibility to hear and resolve proceedings that correspond to another jurisdiction." *Id.*

**Second Circuit Opinion.**  On January 26, 2012, the Second Circuit issued its opinion. Although Chevron had premised its suit for a declaration that the Ecuadorian judgment was not enforceable on the federal Declaratory Judgment Act, not New York's Uniform Foreign Country Money-Judgments Recognition Act, N.Y. C.P.L.R. §§ 5301−5309 (the "Recognition Act"), the Second Circuit held instead that the Recognition Act itself does not authorize a judgment debtor to seek a declaration of non-enforcement of a foreign judgment before a judgment-creditor attempts to enforce that judgment or otherwise puts the Recognition Act at issue. *Chevron Corp. v. Naranjo*, --- F.3d ---, 2012 WL 232965, at *1 (2d Cir. Jan. 26, 2012).  It then concluded that the Declaratory Judgment Act could not authorize a suit where state law (*i.e.*, the Recognition Act) did not itself do so.  The court therefore vacated the preliminary injunction and remanded with instructions to dismiss Chevron's Count 9 Action.[5]

The Second Circuit's decision was based on its procedural determination regarding the scope of the Declaratory Judgment Act.  *Id.* at *6 ("Whatever the merits of Chevron's complaints about the Ecuadorian courts, . . . the procedural device it has chosen to present those claims is simply unavailable.").  The Second Circuit left undisturbed this Court's factual findings regarding Defendants' widespread fraud.  *Id.* at *12 n.17 ("[W]e express no views on the merits of the parties' various charges and counter-charges regarding the Ecuadorian legal system and their adversaries' conduct of this litigation . . . .").  The Second Circuit also denied Defendants' petition for mandamus and their request for reassignment on remand.  *Id.* at *5 n.11.

---

[5]       The Second Circuit acknowledged Defendants' argument that "because the Ecuadorian intermediate appellate court had not yet issued its opinion, . . . the Ecuadorian trial court's decision was thus not final, conclusive, or *enforceable* where rendered." *Id.* at *7, n.16 (emphasis added).  Nonetheless, the court disagreed because "the Ecuadorian intermediate court has now released its opinion; the decision may now be enforceable . . . ." *Id.*

**The Patton Boggs Action.**  The law firm of Patton Boggs LLP has represented the LAPs in various fora since at least 2010, including, as noted above, in the Second Circuit appeal from this Court's preliminary injunction.  Patton Boggs also authored at least one brief (and likely many others) on behalf of the LAPs in this Court in this action—the LAPs' initial response to Chevron's application for a temporary restraining order, as the LAPs' ostensible counsel, Sheldon Elsen, at the time represented in open court.  *See* Mastro Dec., Ex. 9 at 21:10–12, 21:20–21 ("The first thing I said to the people who were preparing the papers, I said start with *Morrison* . . . . It was the Patton Boggs firm.").

On February 15, 2012, Patton Boggs initiated the Patton Boggs Action against Chevron in the United States District Court for the District of New Jersey.  James Tyrrell, counsel of record for the LAPs in the Second Circuit appeal, signed the complaint.  The three claims alleged in the Patton Boggs Action focus entirely on Chevron's conduct in this action, as well as this Court's decision to grant Chevron's preliminary injunction.  Patton Boggs also seeks injunctive relief controlling the disposition of the bond posted in this action.  Mastro Dec., Ex. 1, ¶ 65.

For example, Patton Boggs:

- avers that Chevron's "very purpose in seeking a frivolous injunction" was to cause harm to the LAPs and their various lawyers and consultants, *id.*, ¶ 37;

- claims that the preliminary injunction "choked off the [LAPs'] ability to obtain funding that would allow them to reasonably contend with" Chevron's lawyers, *id.*, ¶ 34;

- states that the preliminary injunction "incapacitated the [LAPs'] lawyers and consultants, including Patton Boggs, directly and indirectly, at a pivotal time in this eighteen-year litigation," *id.*, ¶ 35;

- posits that the preliminary injunction left the LAPs "holding a judgment with inadequate resources to enforce it" because, among other reasons, "[w]ould-be contributors to the [LAPs'] cause were deterred by the lack of capital and the threat of a worldwide injunction that would prevent the [LAPs] from ever monetizing the Ecuadorian judgment," *id.*, ¶ 36; and

8

- argues that Chevron sought the preliminary injunction "to incapacitate its litigation adversaries at a crucial moment in the case, by cutting off their ability to obtain funding and to otherwise prepare for its next phases." *Id.*, ¶ 56.

According to Patton Boggs, the injunction "forced the [LAPs] and their counsel to sit on the sidelines and precluded them from taking measures to attach and restrain the movement and disposition of assets." *Id.*, ¶ 35.[6]  Patton Boggs alleges that the LAPs "now find themselves holding a judgment with inadequate resources to enforce it."  Mastro Dec., Ex. 1, ¶ 36.

Patton Boggs has already attempted—repeatedly and unsuccessfully—to assert similar baseless allegations against Chevron in two actions in the U.S. District Court for the District of Columbia (Case Nos. 11-7082, 11-7089)—including harm allegedly caused by this Court's injunction, accusing Chevron of seeking a TRO as "merely the latest volley in [Chevron's] near constant efforts to thwart Patton Boggs's ability to represent its clients."  Mastro Dec., Ex. 13, ¶ 52.  The D.C. District Court dismissed Patton Boggs's original complaint against Chevron seeking a declaratory judgment, denied its motion for reconsideration of that ruling, and rejected a proposed amended complaint that would have added a tortious interference claim, among others, against both Chevron and its counsel, Gibson Dunn.  The court then dismissed a second lawsuit that presented the same claims that it had previously rejected.  *See* Mastro Dec., Ex. 15.  Patton Boggs subsequently filed an appeal to the D.C. Circuit.  Although oral argument was originally scheduled for March 19, 2012, the D.C. Circuit issued an order on March 2 stating that it would "dispose of the appeal without oral argument."  Mastro Decl., Ex. 18 ; *see* D.C. Circuit Court of Appeals R. 34(a)(2) ("Oral argument must be allowed in every case unless a panel of three judges who have examined the briefs and record unanimously agrees that oral argument is unnecessary for any of the

---

[6]     Far from "sitting on the sidelines," the LAPs continued to press forward with their scheme to force a payoff from Chevron—including initiating a Section 1782 proceeding in April 2011, more than two months after this Court's TRO.  *See In re Yaiguaje*, No. 11-mc-80087-CRB (N.D. Cal. Apr. 27, 2011).  In fact, the LAPs filed and argued a motion to compel in that action in August 2011 (which has yet to be ruled on).

following reasons: (A) the appeal is frivolous; (B) the dispositive issue or issues have been authoritatively decided; or (C) the facts and legal arguments are adequately presented in the briefs and record, and the decisional process would not be significantly aided by oral argument.").

Beyond any supposed harm to its clients (for which its New Jersey action seeks no remedy), Patton Boggs's latest complaint asserts that this Court's injunction harmed Patton Boggs *itself*:  The LAPs' "current and former counsel and consultants, including Patton Boggs, find themselves with unpaid bills.  Providers of legal services and advice, like Patton Boggs, . . . wrongfully were enjoined from rendering the very services that they are in the business of providing."  Mastro Dec., Ex. 1, ¶ 36.  Although the complaint states that—despite having authored (without attribution) briefs filed in this action—"Patton Boggs never appeared as counsel for the [LAPs] in any of the related proceedings in the Southern District of New York," *id*., ¶ 18, Patton Boggs nonetheless seeks to recover the damages it says it incurred as a result of this Court's "frivolous injunction."  *Id*., ¶ 37.

**Motion for Recusal.**  On February 17, 2012—just two days after the Patton Boggs law firm represented to the District Court in New Jersey that "Patton Boggs never appeared as counsel for the [LAPs] in any of the related proceedings in the Southern District of New York," *id*., ¶ 18—James Tyrrell of Patton Boggs apparently "appeared" as counsel of record for the "Ecuadorian Plaintiffs" in a motion to recuse, filed in the Count 9 Action.  *See Chevron Corp. v. Salazar*, No. 11-cv-03718-LAK-JCF (S.D.N.Y. Feb. 17, 2012) Dkt. 378.  Later that same day, the recusal motion was withdrawn with the contention that (a) it was mistakenly filed it in the Count 9 Action, rather than the RICO Action, and (b) "the motion mistakenly listed the Patton Boggs firm as co-counsel on the motion."  *Id*., Dkt. 379.  Donziger then immediately refiled his recusal motion in the RICO Action—this time, without listing Patton Boggs as counsel of record

10

for the LAPs.  *See* Dkt. 391.

**Ecuadorian Appellate Court Allows Enforcement to Go Forward in Defiance of International Arbitral Rulings.**  On January 25, 2012, the international tribunal hearing the Bilateral Investment Treaty arbitration between Chevron and the Republic of Ecuador (the "BIT Tribunal") converted the Interim Order it had issued on February 9, 2011, into a First Interim Award on Interim Measures.  The "final[,] binding," and enforceable, Award" required Ecuador "take all measures at its disposal to suspend" the enforceability of the Lago Agrio Judgment. Mastro Dec., Ex. 16.  Nonetheless, the intermediate appellate court presiding over Chevron's appeal in Ecuador stated that it would not "suspend or cause to be suspended the recognition and enforcement of the judgment."  Mastro Dec., Ex. 11 at 3.

On February 16, 2012, after conducting a day-long evidentiary hearing, the BIT Tribunal issued its Second Interim Award on Interim Measures, expanding the scope of its orders and requiring Ecuador to "take all measures necessary to suspend or cause to be suspended the enforcement and recognition within and without Ecuador of the [judgment]," in particular, "such measures to preclude any certification by [Ecuador] that would cause [the judgment] to be enforceable against [Chevron]"  Mastro Dec., Ex. 17, *Chevron Corp. and Texaco Petroleum Co. v. Republic of Ecuador*, PCA Case No. 2009-23, Second Interim Award on Interim Measures, at ¶ 3 (Feb. 16, 2012).  Ecuador's Attorney General subsequently notified Ecuador's intermediate appellate court that the arbitral award applied to all branches of Ecuador's government.  Mastro Dec., Ex. 10.  On March 1, 2012, the intermediate appellate court nevertheless granted the LAPs' request to declare the judgment "enforceable."[7]  Dkt. 410-8 at 22–27; Dkt. 410-10 at 1–6.

---

[7]     Despite the Ecuadorian appellate court's statements rejecting these Interim Awards, Chevron expects Ecuador to fulfill its international law and Treaty obligations to comply with the Tribunal's First and Second awards.

## ARGUMENT

### This Court Should Exonerate Chevron's $21.8 Million Bond

The Second Circuit vacated this Court's preliminary injunction more than five months ago—there is no longer any basis for maintaining Chevron's bond.  Defendants suffered no cognizable damages as a result of the preliminary injunction because, as they repeatedly have admitted, the Ecuadorian judgment was unenforceable for the entire period that the injunction was in place.  And even if this Court were to order some amount of "damages" to be paid from Chevron's bond (despite the lack of any cognizable harm as a proximate result of the injunction), Patton Boggs's claim against the bond is meritless and should be rejected.  The Court should therefore exonerate Chevron's entire $21.8 million bond.

### A.      The Court Has the Authority to Exonerate the Bond It Ordered Posted.

In granting Chevron's motion for a preliminary injunction, this Court ordered Chevron to post a $21.8 million bond and "to abide further order of the Court."  *Donziger*, 768 F. Supp. 2d at 657.  Now that the preliminary injunction has been vacated, the bond no longer serves any purpose, and the Court may issue an order exonerating it.  "It has been held that in actions on preliminary injunction bonds the district court has discretion to grant relief in the same proceeding or to require the institution of a new action on the bond.  It is believed, however, that in all cases the litigant should have a right to proceed on the bond in the same proceeding … in the interest of efficiency."  Fed. R. Civ. P. 65, advisory committee notes to 1946 amendment (citation omitted); *see also Nokia Corp. v. InterDigital, Inc.*, 645 F.3d 553, 561 (2d Cir. 2011) (with respect to whether a party may recover damages against a preliminary injunction bond, and in what amount, "we leave it to the district court to resolve these questions in the first instance"); *ING Fin. Partners*, *Inc. v. Johansen*, 2007 WL 3224743, at *2 (D. Minn. Oct. 29, 2007) (court di-

rected return of injunction bond after Court of Appeals vacated preliminary injunction, finding "Plaintiff's security is no longer necessary").

**B.     The Narrow Purpose of the Bond Was to Protect the Lago Agrio Plaintiffs Against Damages Resulting From Delay in Enforcement of the Lago Agrio Judgment.**

This Court did not order Chevron to post a bond as a potential remedy for all problems that Steven Donziger and his co-conspirators might encounter in their global scheme to extort and defraud Chevron.  *See*, *e.g.*, Mastro Dec., Ex. 1, ¶ 36 (lamenting that "[w]ould-be contributors to the [LAPs'] cause were deterred by the lack of capital and the threat of a worldwide injunction that would prevent the [LAPs] from ever monetizing the Ecuadorian judgment").  Nor was the bond a "down-payment" on enforcement of the fraudulent $18 billion judgment.  To the contrary, the Court articulated a narrow and specific purpose for the bond:  to protect the LAPs against the harm, if any, caused by delay in enforcement of their judgment as a result of the preliminary injunction.

Rule 65 mandates the posting of security "in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained."  Fed. R. Civ. P. 65(c).  "Rule 65(c)'s bond requirement . . . assures the enjoined party that it may readily collect damages from the funds posted in the event that it was wrongfully enjoined, and that it may do so without further litigation and without regard to the possible insolvency of the plaintiff."  *Nokia*, 645 F.3d at 557.

Thus, when this Court ordered Chevron to post a $21.8 million bond, it correctly noted that "the purpose of the bond requirement is not to secure the collectability of that [Ecuadorian] judgment . . . . It is simply to protect the LAP Representatives against any injury that they may suffer if they are enjoined for a period from seeking to enforce that judgment and the injunction ultimately proves to have been inappropriate—in other words, to ensure payment of any damages

13

caused by the delay in enforcement." *Donziger*, 768 F. Supp. 2d at 657. "The only possible damage apparently would be a function of the time value of money—the loss of any funds that ultimately may properly be collectible for the period during which the preliminary injunction is in effect." *Id*.

> ### C.   The Lago Agrio Plaintiffs Incurred No Damages Because the Injunction Did Not Cause Any Delay of Enforcement.

This Court's preliminary injunction was in place between March 7 and September 19, 2011—a little more than seven months. For approximately five of those months, the Second Circuit limited the injunction to prevent only "commencing, prosecuting, or receiving benefit from recognition, enforcement, or pre-judgment seizure or attachment proceedings." Mastro Dec., Ex. 2 at 1. Based on Defendants' own admissions, they did not—and could not have—sustained any harm during the pendency of that injunction.

Defendants have represented numerous times that their judgment against Chevron was unenforceable and would remain so until sometime after the Ecuadorian intermediate appellate court issued its opinion—which did not occur until January 3, 2012, three months *after* the Second Circuit had vacated the injunction. In their Second Circuit briefing in mid-2011, Defendants stated unequivocally that "the judgment will remain *unenforceable* at least until the intermediate Ecuadorian appeals court renders its decision." Mastro Dec., Ex. 4 at 54 (emphasis added); *accord* Mastro Dec., Ex. 3 at 54. Following oral argument, and in response to a direct inquiry from Judge Wesley, Mr. Tyrrell of Patton Boggs stipulated on behalf of all the LAPs that they would not "commence pre-judgment attachment or enforcement proceedings anywhere in the world" during the pendency of appeal to the intermediate appellate court. Mastro Dec., Ex. 6 at 1.

Indeed, in the almost six months since the Second Circuit vacated the injunction and then the nine weeks since the decision of the Ecuadorian intermediate appellate court, Defendants *still* have not sought to enforce their fraudulent judgment.  And the BIT Tribunal has ordered the Republic of Ecuador (which includes that nation's courts) to "take all measures necessary to suspend or cause to be suspended the enforcement and recognition within and without Ecuador of the [judgment]."  Mastro Dec., Ex. 17, at ¶ 3 (Feb. 16, 2012).  The Tribunal ordered the Republic of Ecuador in particular to take "such measures to preclude any certification by [Ecuador] that would cause [the judgment] to be enforceable against [Chevron]."  *Id*., *see also* Mastro Dec., Ex. 10 (letter dated February 16, 2012, from Ecuador's attorney general to the justices of Ecuador's intermediate appellate court, notifying them of the arbitral award against Ecuador and that it applies to all branches of government).

Consequently, during the seven months that this Court's preliminary injunction was in place, the injunction did not proximately cause Defendants any harm.  To the extent they suffered any "harm" from having to "delay" enforcement of the fraudulent judgment, such "delay" would have been proximately caused by the intermediate appellate court in Ecuador, not Chevron or this Court.  *See Blumenthal v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 910 F.2d 1049, 1054-55 (2d Cir. 1990) ("[Wrongfully enjoined parties] are entitled to damages as may be shown to have been *proximately caused* by the injunction, up to the amount of the bond." (emphasis added and citation omitted)).

### D.    Patton Boggs Should Recover Nothing From Chevron's Bond

Even assuming *arguendo* that any of the parties in this action were able to recover some amount of Chevron's bond (they cannot, as explained above), Patton Boggs's claim to any recovery is meritless.  To the contrary, Patton Boggs's federal action in New Jersey—which seeks

"damages" to be paid from Chevron's bond in this action, premised on this Court's supposedly "frivolous" injunction—is fatally flawed in several respects.

Claim One in the Patton Boggs Action seeks to recover the full amount of Chevron's bond posted as security in this case. *See* Mastro Dec., Ex. 1, ¶¶ 47, 48 (seeking damages for unpaid legal fees and "inability to perform certain legal services for its clients"). But Patton Boggs is not entitled to recover anything under this Court's bond order, which, by its very terms, applies only to "Defendants" here, not Patton Boggs. Thus, any entitlement by Patton Boggs to proceed against Chevron's bond would necessarily require Patton Boggs to demonstrate that it was either a party or somehow stands in the shoes of a party in the underlying action—which it does not and cannot do. Moreover, even if Patton Boggs could claim a share of Chevron's bond based on damages that Patton Boggs itself allegedly sustained as a result of the injunction, *this Court* plainly should make that determination, since it issued the injunction and is most familiar with its purpose and the proper interpretation of its terms.[8]

Likewise, Claim Two of the Patton Boggs complaint seeks to recover the "legal fees generated by Patton Boggs in support of the [LAPs'] defense against Chevron's motion for a TRO and Preliminary Injunction, and … its legal fees generated in prosecuting the [LAPs'] appeal of the Preliminary Injunction to the Second Circuit." Mastro Dec., Ex. 1, ¶ 53. Patton Boggs's efforts to recoup the LAPs' attorneys' fees are ironic, because Patton Boggs insists that the LAPs never paid those fees, *id*., ¶ 47, and because Patton Boggs claims it has "never appeared as counsel for the [LAPs] in any of the related proceedings in the Southern District of New York," *id*., ¶ 18. They are also misguided, because attorney's fees are not recoverable out of an injunction

---

[8]     Chevron is now seeking from the federal court in the District of New Jersey an order of transfer of the Patton Boggs Action pursuant to the first-to-file rule and 28 U.S.C. § 1404. *See, e.g.*, *AEP Energy Servs. Gas Holding Co. v. Bank of Am., N.A.*, 626 F.3d 699, 722-23 (2d Cir. 2010); *Adam v. Jacobs*, 950 F.2d 89, 93 (2d Cir. 1991); *City of New York v. Exxon Corp.*, 932 F.2d 1020, 1025-27 (2d Cir. 1991); *Nat'l Equip. Rental, Ltd. v. Fowler*, 287 F.2d 43, 45 (2d Cir. 1961). Chevron has apprised each court by letter of the steps it is taking in the other.

bond.  *See Nokia*, 645 F.3d at 560 ("[P]revailing party may not generally collect as damages against an injunction bond attorneys' fees expended in litigating against the injunction.").

Count Three of the Patton Boggs complaint seeks damages in excess of Chevron's $21.8 million bond under a "malicious prosecution" theory:  that Chevron supposedly maliciously obtained the injunction to "incapacitate its litigation adversaries at a crucial moment in the case, by cutting off their ability to obtain funding and to otherwise prepare for its next phases." Mastro Dec., Ex. 1, ¶ 56.  To the extent that Patton Boggs attempts to argue that the bond should not be exonerated because of its malicious prosecution claim, it is appropriate for the Court to consider that Chevron had and has a legitimate interest in protecting itself against Defendants' racketeering activity, including any attempts to enforce and disperse the proceeds of the fraudulent $18.2 billion judgment.  This Court's prior factual findings—largely based on evidence that the Court correctly noted was "undisputed in every meaningful sense" (Dkt. 181 at 120)—establish the legitimate purpose of Chevron's requests for a TRO, a preliminary injunction, an order of attachment and other relief, and were in no way disturbed on appeal.  It thus makes no sense for Patton Boggs to allege that Chevron sought an injunction merely because it wanted to harm the LAPs, their counsel, and other defendants.[9]  In any event, Patton Boggs was not a party

---

[9]     Patton Boggs's lawsuit in the District of New Jersey is an effort to evade this Court's jurisdiction and to avoid the numerous rulings that this Court has already made.  *See, e.g., Chevron Corp. v. Salazar*, No. 11-cv-03718-LAK-JCF (S.D.N.Y. Aug. 17, 2011) Dkt. 229 at 23, 19 (granting Chevron's motion for judgment on the pleadings as to the LAPs' affirmative defense of "unclean hands" because, among other reasons, "many of [the LAPs'] allegations are contradicted by U.S. court records or otherwise are demonstrably false," and "a moment's reflection shows that the LAP Representatives['] contrary position is baseless").  And Patton Boggs is also seeking to relitigate issues twice resolved against it by the District of D.C., which repeatedly dismissed Patton Boggs's lawsuit against Chevron.  Specifically, Patton Boggs raised identical allegations in the context of its proposed and twice-rejected "tortious interference" claim, which accused Chevron (and Gibson Dunn) of interfering with the LAPs' funding and the attorney-client relationship.  *Compare* Mastro Dec., Ex. 12, ¶¶ 3 (arguing that Chevron used the Section 1782 discovery mechanism "as a means to deplete the Ecuadorian Plaintiffs' limited resources and ostensibly to litigate a foreign case in the American courts"), 4–5 (claiming that Chevron has "taken steps to prevent Patton Boggs from obtaining payment for its services on behalf of the Ecuadorian Plaintiffs," and otherwise has done "everything it can to avoid engaging on the merits, to obstruct the progress of the case, and to deprive the Ecuadorian Plaintiffs of legal representation and aid"), and *id.*, Ex. 13, ¶ 26 (accusing Chevron of plotting "to cripple the lead United States Coun-

to the underlying case, and "[o]nly a party to the proceeding complained of as a malicious prose-cution is entitled to maintain an action for malicious prosecution." *Crown Wisteria, Inc. v. F.G.F. Enters.*, 562 N.Y.S.2d 616, 618 (App. Div. 1990).[10]

### E.   The Court Should Exonerate the Entire $21.8 Million Bond.

Because Defendants have sustained no damages as a result of this Court's preliminary in-junction, the Court should exonerate the full amount of Chevron's bond.  This Court should also recognize that, under federal law, the litigating parties bear their own fees and costs in connec-tion with the resolution of Chevron's declaratory judgment action and preliminary injunction ap-plication.  *See, e.g.*, *Nokia*, 645 F.3d at 560.  Moreover, there was nothing "frivolous" about this Court's preliminary injunction order.  Though the Second Circuit disagreed with this Court on the *legal issues* surrounding the interaction of the federal Declaratory Judgment Act and New York's Recognition Act, the Second Circuit did not pass on, much less disagree with, this Court's factual findings as to Defendants' extortionate scheme.  Thus, given the substantial rec-ord evidence of Defendants' misconduct, even if they could demonstrate some calculable harm stemming from the injunction (which they cannot), equitable considerations would weigh strong-ly in favor of returning the full amount of the bond to Chevron.  *See Monroe Div., Litton Bus. Sys., Inc. v. De Bari*, 562 F.2d 30, 33 (10th Cir. 1977) ("Equity comes into play in determining whether there may be recovery [on a preliminary injunction bond] and the amount thereof.").

---

sel for the Ecuadorian Plaintiffs at the most critical time in the case"); *with id.*, Ex. 1, ¶¶ 9 (arguing that Chevron used the Section 1782 discovery mechanism "to launch a U.S.-based collateral attack on the Ecuadorian proceed-ings"), 34–35 (claiming that Chevron has "choked off the [LAPs'] ability to obtain funding" and "incapacitated the [LAPs'] lawyers and consultants, including Patton Boggs"), 58 (accusing Chevron of plotting "to cripple its litiga-tion adversary at arguably the most pivotal moment in this 18-year case").

[10]     Even assuming for sake of argument that Patton Boggs had standing to pursue its baseless theory, Chevron sought its preliminary injunction not only pursuant to the Declaratory Judgment Act, but also the RICO and other claims that are currently pending before this Court, and which may (and should) terminate in Chevron's favor.  *See Babi-Ali v. City of New York*, 979 F. Supp. 268, 276 (S.D.N.Y. 1997) ("The second element of a claim of malicious prosecution requires the Plaintiff to demonstrate that the proceeding was terminated in his favor.").

## CONCLUSION

Chevron respectfully requests that this Court exonerate Chevron's $21.8 million preliminary injunction bond in light of Defendants' admitted lack of damages resulting from delayed enforcement of their fraudulent judgment.


Dated:  March 13, 2012                    Respectfully submitted,

                                          GIBSON, DUNN & CRUTCHER LLP

                                          */s/ Randy M. Mastro*
                                          Randy M. Mastro
                                          200 Park Avenue
                                          New York, New York 10166
                                          Telephone: 212.351.4000
                                          Facsimile: 212.351.4035

                                          Andrea E. Neuman
                                          3161 Michelson Drive
                                          Irvine, California 92612
                                          Telephone: 949.451.3800
                                          Facsimile: 949.451.4220

                                          William E. Thomson
                                          333 South Grand Avenue
                                          Los Angeles, California 90071
                                          Telephone: 213.229.7000
                                          Facsimile: 213.229.7520

                                          Attorneys for Chevron Corporation