UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------- x
: 
CHEVRON CORPORATION, :
:
              Plaintiff, :
:
  -against- :
:
MARIA AGUINDA SALAZAR, et al., :  CASE NO. 11 Civ. 3718 (LAK)
:  CASE NO. 11 Civ. 0691 (LAK)
              Defendants, :
:
  -and- :
:
STEVEN DONZIGER et al., :
:
              Intervenors. :
------------------------------------- x


**DEFENDANTS HUGO GERARDO CAMACHO NARANJO'S
AND JAVIER PIAGUAJE PAYAGUAJE'S
OPPOSITION TO PLAINTIFF CHEVRON CORPORATION'S
MOTION TO EXONERATE CHEVRON'S $21.8 MILLION BOND**

**PRELIMINARY STATEMENT**

Last year, Chevron Corporation ("Chevron") persuaded this Court to enter an improper injunction against Defendants Hugo Gerardo Camacho Naranjo and Javier Piaguaje Payaguaje (the "Ecuadorian Plaintiffs") and their agents.[1]  (*See* No. 11-cv-0691, Dkt. 77 at 2, Dkt. 181 at 129.)  The U.S. Court of Appeals for the Second Circuit dissolved this injunction in record time – the first business day after oral argument – and ultimately ruled Chevron was not entitled to the restraints as a matter of law.  *See Chevron Corp. v. Naranjo*, 667 F.3d 232 (2d Cir. 2012).

This Court appropriately required Chevron to post a bond to protect the Ecuadorian Plaintiffs and others from Chevron's wrongful injunction.  Now Chevron wants the Court to excuse it – purportedly by "exonerating" the bond – from the consequence of its rash and impermissible injunction.  The Court should decline Chevron's invitation.  To exonerate the bond now, less than a month after the Second Circuit issued its mandate dissolving the injunction and ordering Chevron's declaratory relief claims dismissed, is premature.

A claim against the injunction bond, filed by Patton Boggs LLP pursuant to 28 U.S.C. § 1352, is pending before another United States District Court.  Exoneration of the bond during the pendency of that claim would be premature.  In addition, an applicable statute of limitations governs claims against an injunction bond.  Chevron's obligation to maintain the injunction bond should remain in force until that statute runs and Chevron has not demonstrated any prejudice in maintaining the injunction bond.[2]

---

[1] *See* Fed. R. Civ. Proc. Rule 65(d)(2); (*see also* March 27, 2012 Declaration of Craig Smyser ("Smyser Decl."), Ex. 1, at 1 (Chevron email to attorneys attaching letter notifying same counsel "that Chevron Corporation considers you and anyone else in active concert or participation . . . to be on actual notice of, and bound by, Judge Kaplan's [preliminary injunction] order").)

[2] Although Chevron's motion to exonerate the bond was originally styled as an application for an Order to Show Cause, this Court denied the Order to Show Cause and converted the application to a motion. (Dkt. 394.)  By filing this opposition to the motion to exonerate the bond, the Ecuadorian Plaintiffs do not

Chevron also requests that this Court "confirm" that when it fixed the amount of the injunction bond at $21.8 million in March 2011 based on "the time value of money" resulting from a possible delay in enforcement of the Ecuadorian judgment, the Court's fixing of the injunction bond amount served a dual purpose: (1) to make available a sum certain for possible damages as provided in Rule 65(c); and (2) to substantively limit the types of claims that could be later brought against the injunction bond. (Memo Br., at 13-15.) Chevron cites no case law to support this request.

Injunction bonds are intended to safeguard enjoined parties, including the Ecuadorian Plaintiffs and their agents, by providing a source of recovery for damages arising from an improvident injunction. Chevron would turn the law on its head by seeking a hold-harmless declaration – a kind of declaratory judgment – from this Court exonerating the bond. This Court should deny Chevron's motion in all respects.

## ARGUMENT

I.  **CHEVRON'S MOTION TO EXONERATE IS PROCEDURALLY IMPROPER AND HAS NO BASIS IN LAW**

   A.  **The Exoneration Motion Is Unripe and Disfavored**

Filed less than one month after the Second Circuit issued the mandate in the interlocutory appeal of the Preliminary Injunction,[3] Chevron's motion to exonerate the bond is both improper and premature. Exoneration of an injunction bond is disfavored as a matter of law. *See, e.g.*,

---

intend to waive any defenses they may have in connection with either proceeding No. 11-cv-3718-LAK or proceeding No. 11-cv-0691-LAK, including but not limited to, a lack of personal jurisdiction, improper venue, and insufficiency of service of process. While the Ecuadorian Plaintiffs have opposed Chevron's motion on both dockets, the Court premised its issuance of the Preliminary Injunction on Count 9 of Chevron's Complaint, and that count was severed to create the Count 9 (*Salazar*) declaratory relief docket. (*See* Dkt. 1-1.) All docket references are to the Count 9 (*Salazar*) proceedings unless otherwise indicated.

[3] The United States Court of Appeals for the Second Circuit issued its mandate on February 16, 2012. (*See* Dkt. 377.) Chevron filed its motion for exoneration twenty-six days later on March 13, 2012.

*Buddy Sys., Inc. v. Exer-Genie, Inc.*, 545 F.2d 1164, 1169 (9th Cir. 1976) (where plaintiff "moved immediately for an order exonerating its bond, thereby depriving [defendant] of the protection the injunction bond is intended to provide," Ninth Circuit opined that district court's exoneration of injunction bond was "premature" and "erroneous," albeit incurable because defendant failed to timely appeal from exoneration); *Benrus Watch Co. v. Weinstein Wholesale Jewelers, Inc.*, 163 N.E.2d 406, 410 (Ohio Ct. App. 1959) ("In the absence of a claim for damages upon the bond, it would appear to be the better practice to dissolve the injunction without prejudice to any claim for damages, and to refrain from cancelling the bond."); *see also* 42 AM. JUR. 2d. § 334 (2012) ("The better practice, upon dissolving an injunction, is to refrain from canceling the bond.").

This only makes sense. "[T]he theory of the injunction bond rule is that '[t]he plaintiff, in effect, consent[s] to liability . . . as the price for [the injunction].'" *Factors Etc., Inc. v. Pro Arts, Inc.*, 562 F. Supp. 304, 308 (S.D.N.Y. 1983). This theory—and the policy animating Rule 65(c)—is thwarted if a plaintiff can simply run into court after an improper injunction is dissolved and obtain a declaration that it bears no liability to anyone.

The two cases Chevron cites in support of its premature exoneration are inapposite. (Memo Br., at 12-13 (citing *ING Fin. Partners, Inc. v. Johansen*, No. 04-CV-1061, 2007 WL 3224743 (D. Minn. Oct. 29, 2007); *Nokia Corp. v. InterDigital, Inc.*, 645 F.3d 553, 561 (2d Cir. 2011)).) The first case, *ING Financial Partners Inc.*, is an unpublished, three-page order which—in two cursory sentences—addressed the disposition of a $5,000 bond against which, it appears, no one ever filed a claim. 2007 WL 3224743, at *2. Notably, the Minnesota court did not release the $5,000 bond at issue until 17 months following appellate court review of the injunctive relief. *See id.* It does not appear from a review of the docket that the return of the

3

bond in the *ING Financial Partners, Inc.* case was in any way contested and there is no indication that a separate action had been initiated to recover against the injunction bond. *See id.* at *2 (noting court was forced to order status conference "[n]ot having heard from the Defendants"). The second case, *Nokia Corp. v. InterDigital, Inc.*, also does not stand for the proposition that exoneration is appropriate, as *Nokia* did not involve a motion for exoneration – but rather was an appeal taken in connection with a motion to recover against an injunction bond pursuant to Rule 65. 645 F.3d 553.

Chevron alleges immediate exoneration is necessary to prevent "multiple, potentially conflicting rulings in multiple jurisdictions." (Memo. Br., at 3.) This claim is both unripe and untrue. Chevron can cite only one claim against the injunction bond, which was filed by Patton Boggs LLP.[4] That claim is currently pending before a different Federal court in a separate action brought under 28 U.S.C. § 1352, (*see* Dkt. 383, Declaration of Randy M. Mastro, dated Mar. 13, 2012, Ex. 1, at ¶ 38), and that claim predated Chevron's motion to exonerate by nearly one month. No other claims against the injunction bond are pending.[5] Thus, Chevron's claim of "conflicting rulings in multiple jurisdictions" is based on its usual hyperbole of "the sky is falling" variety.

Chevron fails to explain how the company is in any way prejudiced by maintaining the bond through, at least, the pendency of orderly proceedings in the earlier-filed District of New

---

[4] Patton Boggs LLP has not appeared in this action and neither the Ecuadorian Plaintiffs nor Patton Boggs LLP filed a motion to recuse following the issuance of the Second Circuit's mandate. (*See* Dkst. 378, 379, 380.)

[5] On March 22, 2012, over Chevron's objections, the District of New Jersey granted Patton Boggs LLP's Order to Show Cause Why Chevron Corporation Should Not Be Enjoined, Pursuant to the First-Filed Rule, From Taking Any Steps Toward "Exonerating" the Injunction Bond at Issue in This Proceeding and set an expedited briefing schedule on the merits of the application. (*See* Smyser Decl., Exs. 3, 4, 5.)

4

Jersey action.[6]  Given its massive financial resources, (*see* Smyser Decl., Ex. 6, at 49:21-25), Chevron cannot credibly argue that it will suffer any financial harm in maintaining the $21.8 million injunction bond.  In weighing the principle of law that a wrongly enjoined party may suffer through premature exoneration of an exoneration bond against Chevron's failure to allege any current prejudice in maintaining the bond, it is clear that a motion for exoneration of the bond should be denied.

### B. A Declaratory Judgment Cannot Absolve a Party of Liability for Events That Occurred in the Past

While styled as a motion for exoneration, Chevron's maneuver amounts to an improper action for declaratory relief.  To proceed under the Declaratory Judgment Act, a plaintiff must establish, *inter alia*, the existence of an actual controversy.  *See* 12 JAMES WM. MOORE ET AL., MOORE'S FEDERAL PRACTICE § 57.09 (3d ed. 2011). The purpose of the Act is to "allow[] parties to ascertain the potential legal consequences of their actions *before* taking those actions." *Id.* at § 101.80[1] (emphasis added).

To the extent Chevron seeks a declaration of non-liability through its motion for exoneration, that motion should be denied because "[w]hen the issues presented are no longer live or when the parties lack a legally cognizable interest in the outcome . . . a case or controversy ceases to exist, and dismissal of the [declaratory] action is compulsory." *Libertarian Party of N.H. v. Gardner*, 638 F.3d 6, 12 (1st Cir. 2011) (internal quotations omitted).  Courts have thus declined to grant declaratory relief where plaintiff seeks a determination related to past actions. *See, e.g.*, *J.S. v. Attica Cent. Sch.*, No. 00-cv-513S, 2011 WL 6140527, at *3 (W.D.N.Y.

---

[6] Because Chevron's moving papers failed to raise any other claim of prejudice in maintaining the injunction bond pending the outcome of further proceedings, any additional claims of prejudice should be considered waived.  *See Tetra Techs., Inc. v. Harter*, 823 F. Supp. 1116, 1120 (S.D.N.Y. 1993) ("[N]ew but foreseeable points relevant to a motion [may not] be presented in a reply.").

5

Dec. 9, 2011) (holding that where plaintiff failed to provide any evidence of defendant school district's wrongdoing subsequent to the 2006-2007 school year, no "live issues" existed at the time of adjudication in 2011 and "declaratory relief for the year 2006-2007 would be meaningless"); *Mobile Mech. Contractors Ass'n, Inc. v. Carlough*, 566 F.2d 1213, 1219-20 (5th Cir. 1977) (holding that district court lacked jurisdiction to enter declaratory judgment pursuant to the Labor-Management Relations Act where declaratory relief sought "would only decide past issues related to possible damage liability growing out of union efforts to get employers to contribute" to trust prior to October 16, 1974).

The law permits one who suffered damages as the consequence of an injunction the opportunity to demonstrate those damages within the applicable statute of limitations period.[7] This Court should not allow Chevron to short-circuit an enjoined party's right to bring a viable cause of action against Chevron for the value of the injunction bond *at a time of their choosing*. *See Navin v. Byrne*, 638 F. Supp. 263, 267 (M.D. Pa. 1986) (opining that intent of statutes of limitation are to "specifically provide[] time – an opportunity to select and consult with a lawyer, investigation of her potential claim and initiation of suit."). Declaratory relief is both unwarranted and improper here.

---

[7] Congress has not established a statute of limitations for motions to recover on an injunction bond pursuant to Rule 65.1 or for independent actions to recover on a bond pursuant to § 1352. In situations where "Congress fails to provide a statute of limitations for a federal cause of action, the federal court must 'borrow' the limitation provision from the state statute most analogous." *Meridien Int'l Bank Ltd. v. Gov't of the Republic of Liberia*, 23 F.Supp.2d 439, 453 n.10 (S.D.N.Y. 1998) (citing *Lampf, Pleva, Lipkind, Prupis & Petigrow v. Gilbertson*, 501 U.S. 350, 355 (1991)). New York courts have explicitly held, however, that under New York law, "there is no common-law cause of action for damages sustained by an improperly procured preliminary injunction, nor does CPLR 6315 create a statutory cause of action." *Honeywell, Inc. v. Technical Bldg. Servs., Inc.*, 480 N.Y.S.2d 627, 629 (N.Y. App. Div. 3d Dept. 1984). Thus, even applying the shortest possible analogous statute of limitations would afford a party damaged by an injunction one year from the date the claim accrued to bring a claim. *See, e.g.*, CPLR § 215(3).

### C. Chevron's Exoneration Motion Is Premised on the Unsupported Notion That This Court Is the Only Competent Court to Adjudicate Injunction Bond Damages

Chevron attempts to force claims against the bond on this docket: Chevron's exoneration motion assumes that the only forum in which the Ecuadorian Plaintiffs can bring a claim against an injunction bond is in the court that granted the improvident injunction in the first instance. But the law does not allow Chevron, as a disappointed litigant, a choice in the matter. An injured party *may* seek recovery by motion pursuant to Federal Rule of Civil Procedure Rule 65, but 28 U.S.C. § 1352 *also* allows an aggrieved party to file in the court of its choosing an independent, collateral action in a new docket to adjudicate its rights to the Federal injunction bond monies. *See Milan Exp., Inc. v. Averitt Exp., Inc.*, 208 F.3d 975, 979 (11th Cir. 2000) ("Rule 65.1 provides a *permissive mechanism* whereby parties aggrieved by a wrongfully issued injunction may summarily seek to recover on an injunction bond by filing a motion in the original suit *rather than by bringing a separate action*." (emphasis added)); *see also id.* at 978-80; *Buddy Sys., Inc. v. Exer-Genie, Inc.*, 545 F.2d 1164, 1169 (9th Cir. 1976) (noting that if plaintiff succeeded in reversing district court's order exonerating injunction bond, plaintiff could have elected to either "move[] the enjoining court for recovery on the reinstated liability under Rule 65.1 . . . *or* br[ing] an independent action to the reinstated liability in state court *or* federal court under 28 U.S.C. §§ 1331 or 1352." (emphasis added)); *Atomic Oil Co. v. Bardahl Oil Co.*, 419 F.2d 1097, 1099 (10th Cir. 1969) (action to recover on injunction bond brought as "a collateral, independent action").[8]

---

[8] The Ecuadorian Plaintiffs note that Patton Boggs LLP brought its action in the District of New Jersey pursuant to § 1352 and has alleged that New Jersey is an appropriate venue, in part, because Patton Boggs rendered "the large majority of its services" in New Jersey and suffered damages there as a consequence of the Preliminary Injunction. (*See, e.g.*, Dkt. 383, Declaration of Randy M. Mastro, dated Mar. 13, 2012, Ex. 1, at ¶ 41.) Chevron has sought to transfer the case to the Southern District of New York, arguing that "Judge Kaplan is already familiar with the purposes of the injunction bond, the merits of Chevron's

7

## II. CHEVRON'S DEMAND FOR A DECLARATION THAT THE PURPORTED "NARROW PURPOSE OF THE BOND" AUTOMATICALLY PRECLUDES ANY RECOVERY BY ANYONE IS MERITLESS

Chevron also seeks a declaration that (1) any claim against the injunction bond must be limited to a single category of damages, *i.e.*, "'damages caused by the delay in enforcement,'" (Memo Br., at 14 (quoting *Chevron Corp. v. Donziger*, 768 F. Supp. 2d 581, 657 (S.D.N.Y. 2011))); and (2) that no other court or judge is competent to weigh evidence and determine whether other pleaded direct or indirect damages were attributable to the preliminary injunction, (*see* Memo Br., at 1-3; *see also* Smyser Decl., Ex. 7, at 15-16.) Chevron does not – and cannot – cite a single case supporting its novel proposition that an enjoined party's recovery against an injunction bond is limited only to the theory of damages used to determine "an amount that the court considers proper" at the time an injunction is first issued. *See* Fed . R. Civ. P. 65(c). Indeed, such a broad limitation on recovery against an injunction bond would be unprecedented.

An enjoined party is presumptively entitled to recover damages when wrongfully enjoined. *See, e.g.*, *Coynie-Delany Co. v. Capital Dev. Bd.*, 717 F.2d 385, 390 (7th Cir. 1983) ("In deciding . . . injunction damages, . . . the district court [is] to be guided by the implicit presumption in Rules 54(d) and 65(c) in favor of awarding them . . . ."); 11A CHARLES ALAN WRIGHT, ARTHUR R. MILLER, ET AL., FEDERAL PRACTICE AND PROCEDURE § 2973 (2d ed. 2011) ("[A] rebuttable presumption exists that a wrongfully enjoined party is entitled to have [the] bond executed and to recover provable damages up to amount of [the] bond . . . ."). Nothing in the law suggests that a party's entitlement to damages must be determined when the injunction entered.

---

claims in the SDNY Action, and Patton Boggs's role." (Smyser Decl., Ex. 7, at 27.) The issue of transfer is presently being briefed before the District of New Jersey.

8

In fact, the full impact of a preliminary injunction on an enjoined party will often not be felt until well after the injunction is entered; its effects may not manifest until long after the injunction is dissolved. At the time a district court fixes the amount of the injunction security pursuant to Rule 65, it is neither possible nor practical for the district court to consider every possible future, collateral damage that may be suffered by the enjoined party as a consequence of the restraints. As the Second Circuit has explained, when an injunction is first issued the restraints need not be so clear as to "'predict exactly what [a litigant] will think of next'" or "describe all possible, permissible future [acts]" that a litigant may require to undertake or to forebear in performing. *S.C. Johnson & Son, Inc. v. Clorox Co.*, 241 F.3d 232, 241 (2d Cir. 2001) (citation omitted); *see also LaForest v. Former Clean Air Holding Co.*, 376 F.3d 48, 60 (2d Cir. 2004) (noting that courts issuing injunctions are not "require[d] . . . to resolve every possible inquiry or contingency that an injunction might raise").

The party subject to the restraints may not be able to identify or brief to the court the types of direct or indirect damages that may result from an improvident injunction until well after the injunction issues. *See* Dan B. Dobbs, *Should Security Be Required as a Pre-Condition to Provisional Injunctive Relief?,* 52 N.C. L. REV. 1091, 1124 (1974) ("[I]t is very difficult to present proof as to a proper amount [of a preliminary injunction bond prior to the entry of the preliminary injunction]. Not only are the defendant's interests likely to be difficult to measure in dollars, but the final effect of the injunction may not be perceived for a long period."). As a result, the amount of the injunction bond, set by a district court pursuant to Rule 65(c), "often reflects a hasty estimate by the court of the potential damages that the defendant might sustain

because of the plaintiff's injunction."[9]  *See* Elizabeth Leight, *The Triggering of Liability on Injunction Bonds*, 52 N.C. L. R<small>EV</small>. 1252, 1252 (1974).

A declaration that Chevron cannot be held to account for direct or indirect damages caused by the wrongful injunction the company obtained is at odds with the presumption that persons wrongly enjoined are entitled to be made whole through an injunction bond. That presumption should not be overcome by the fact that the Court fixed a bond amount pursuant to Rule 65(c) based on one limited theory of possible damages – before the full direct and indirect effects of the injunction were fully realized.

## **CONCLUSION**

The extraordinary relief that Chevron now seeks from this Court – an advance determination that no one, anywhere, in any way could have directly or indirectly suffered any damage resulting from the restraints the company wrongly sought and benefitted from – is unfair, unwarranted, and procedurally infirm. Chevron's motion for exoneration should, respectfully, be denied in all respects.

---

[9] As the Second Circuit has recognized, the Ecuadorian Plaintiffs were permitted only a limited period of time to respond to Chevron's request for a Temporary Restraining Order and Preliminary Injunction. (*See, e.g.*, Smyser Decl., Ex. 2, at 16:1-17:15.) Chevron also refused to enter into any stipulation clarifying or limiting the ambit of the Preliminary Injunction. (*See* No. 11-cv-0691, Dkts. 241, 248, 251, 252-10, 252-11, 255.))

Dated: March 27, 2012

Respectfully submitted,

SMYSER KAPLAN & VESELKA LLP

/s/ *Ty Doyle*_____
Ty Doyle
Craig Smyser (admitted *pro hac vice*)
Larry R. Veselka (admitted *pro hac vice*)
700 Louisiana, Suite 2300
Houston, Texas 77002
Telephone: 713.221.2330
Facsimile: 713.221.2320
Email: tydoyle@skv.com

GOMEZ LLC

/s/ *Julio C. Gomez*_____
Julio C. Gomez
The Trump Building
400 Wall Street, 28th Floor
New York, New York 10005
Telephone: 212.400.7150
Facsimile: 212.400.7151
Email: jgomez@gomezllc.com

*Counsel for Defendants Hugo Gerardo Camacho Naranjo and Javier Piaguaje Payaguaje*