UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
:
CHEVRON CORPORATION,
:
               Plaintiff,
:
                                                      11 Civ. 0691 (LAK)
     v.                                          :   11 Civ. 3718 (LAK)
:
STEVEN DONZIGER, et al.,
:
               Defendants.
:
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**PLAINTIFF CHEVRON CORPORATION'S REPLY MEMORANDUM
OF LAW IN FURTHER SUPPORT OF ITS MOTION TO EXONERATE
CHEVRON'S $21.8 MILLION BOND**

GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, New York 10166-0193
Telephone: 212.351.4000
Facsimile: 212.351.4035

*Attorneys for Plaintiff Chevron Corporation*

## TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ................................................................................................... 1

ARGUMENT .................................................................................................................................. 3

I. Defendants Cannot Recover on Chevron's Bond Because the Injunction Did Not Proximately Cause Them Any Harm. ................................................................................. 3

II. Defendants' Procedural Objections Are Meritless. ............................................................ 4

    A.    Chevron's Motion Is Not "Premature." ................................................................... 5

    B.    There Is No Basis for Maintaining the Bond in Anticipation of Defendants' Unidentified "Indirect" Future Harm. ................................................. 6

    C.    This Court Should Decline Defendants' Request That It Forbear While Patton Boggs Continues Its Machinations. ............................................................. 8

    D.    Defendants' Analogies to a Declaratory Judgment Action Are Misplaced. ............ 9

CONCLUSION ............................................................................................................................. 10

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*BD ex rel. Jean Doe v. DeBuono*,
   193 F.R.D. 117 (S.D.N.Y. 2000) ............................................................................................. 7

*Benrus Watch Co. v. Weinstein Wholesale Jewelers, Inc.*,
   163 N.E.2d 406 (Ohio Ct. App. 1959) ..................................................................................... 5

*Blumenthal v. Merrill Lynch*,
   910 F.2d 1049 (2d Cir. 1999) ................................................................................................... 3

*Buddy Sys., Inc. v. Exer-Genie, Inc.*,
   545 F.2d 1164 (9th Cir. 1976) .................................................................................................. 5

*Factors Etc., Inc. v. Pro Arts, Inc.*,
   562 F. Supp. 304 (S.D.N.Y. 1983) ........................................................................................... 3

*Greenwood Cnty. v. Duke Power Co.*,
   107 F.2d 484 (4th Cir. 1939) .................................................................................................... 7

*Kidder, Peabody & Co. v. Maxus Energy Corp.*,
   925 F.2d 556 (2d Cir. 1991) ................................................................................................... 10

*LaForest v. Former Clean Air Holding Co.*,
   376 F.3d 48 (2d Cir. 2004) ....................................................................................................... 7

*Medafrica Line, S.P.A. v. Am. W. African Freight Conf.*,
   654 F. Supp. 155 (S.D.N.Y. 1987) ........................................................................................... 7

*Mobile Mech. Contractors Ass'n v. Carlough*,
   566 F.2d 1213 (5th Cir. 1977) ................................................................................................ 10

*Nokia Corp. v. InterDigital Inc.*,
   645 F.3d 553 (2d Cir. 2011) ..................................................................................................... 7

*Pacific Rollforming, LLC v. Trakloc N. Am., LLC*,
   2009 WL 3784613 (S.D. Cal. Nov. 9, 2009) ........................................................................... 5

*Philips ex rel. Green v. City of New York*,
   453 F. Supp. 2d 690 (S.D.N.Y. 2006) ...................................................................................... 3

*S.C. Johnson & Son, Inc. v. Clorox Co.*,
   241 F.3d 232 (2d Cir. 2001) ..................................................................................................... 7

*Shah v. Pan Am World Servs., Inc.*,
   148 F.3d 84 (2d Cir. 1998) ....................................................................................................... 4

*Sletten v. Navellier Series Fund*,
   2006 WL 3717375 (D. Nev. Dec. 14, 2006) .................................................................... 1, 5, 7

# TABLE OF AUTHORITIES
(continued)

Page(s)

*Super Tire Eng'g Co. v. McCorkle,*
  416 U.S. 115 (1974) ............................................................................................................ 10

**Statutes**

28 U.S.C. § 1404(a) ...................................................................................................................... 8

**Other Authorities**

Dan B. Dobbs, *Should Security Be Required as a Pre-Condition to Provisional Injunctive Relief?,*
  52 N.C. L. REV. 1091 (1974) ................................................................................................. 7

**PRELIMINARY STATEMENT**

Defendants would have this Court deny Chevron's bond-exoneration motion as "premature," yet they do not even attempt to articulate any basis on which they could possibly make any claim to the bond—now or in the future. Their position is all the more curious because the preliminary injunction that this Court ordered was vacated more than six months ago. And during the entire time the injunction was in place, Defendants asserted to various courts—including this Court and the Second Circuit—that the Ecuadorian judgment was not enforceable. That injunction, therefore, had no practical effect on Defendants, and could not have proximately caused them any harm. Moreover, the Defendants profess not to know yet whether they have any claim to this bond, while, at the same time, their counsel, Patton Boggs, alleges in a separately filed New Jersey action a derivative right to the entirety of the bond yet refuses to appear here to stake its claim. The duplicity of these parties is astounding, but they have made the resolution of this motion simple. Because Chevron's $21.8 million preliminary injunction bond no longer serves any purpose, and Defendants' Opposition does not identify any damages supposedly caused by the injunction, this Court can and should now exonerate the bond.

Unable to demonstrate any harm from the injunction, Defendants resort to a number of baseless procedural objections. They claim it would be "premature" for the Court to exonerate the bond before this action finally concludes. Yet there is nothing unusual about a motion to exonerate a bond once the underlying injunction is no longer in place. *See, e.g.*, *Sletten v. Navellier Series Fund*, 2006 WL 3717375, at *1, *2 (D. Nev. Dec. 14, 2006) (granting motion to exonerate bond following reversal of injunction on appeal). And Defendants' contention is flatly contradicted by the fact that there is now a pending action in New Jersey filed by their own lawyers, Patton Boggs, who seek to exhaust the full amount of Chevron's $21.8 million bond (leaving De-

1

fendants here with nothing) and to restrain Chevron even from proceeding with this motion.

Defendants also assert that the Court should wait to exonerate the bond because they "might" suffer some unspecified "indirect" harm at some unknown point in the future. But this makes no sense. The injunction was vacated more than six months ago, and Defendants fail to explain why any harm flowing from the injunction would not have been felt long ago. And damages are not recoverable unless they are "proximately caused" by the injunction itself, and courts routinely reject speculative, conclusory allegations of harm of the sort Defendants advance here.

In addition, Defendants argue that this Court should defer any disposition on Chevron's bond until the proceedings have concluded in the action filed by their lawyers in New Jersey. Patton Boggs's lawsuit is a transparent attempt to avoid this Court's jurisdiction and evade its prior rulings. Patton Boggs made a strategic gamble not to appear here to oppose Chevron's motion in this Court—despite being on notice of this motion and despite Chevron's explicit statement that it would not oppose Patton Boggs appearing here to contest it. Instead, Patton Boggs chose to seek emergency injunction relief from the New Jersey court, which, if granted, would effectively prevent this Court from determining the appropriate disposition of the bond that it ordered Chevron to post. This Court should not reward Defendants' gamesmanship and Patton Boggs's maneuvering.

In sum, as a matter of law and logic, Defendants have not shown, and cannot show, any harm suffered from the preliminary injunction. Despite ample opportunity to produce evidence of any such harm, no interested party has done so. Under these circumstances, Chevron respectfully requests that this Court now exonerate the $21.8 million bond.

# ARGUMENT

I.   **Defendants Cannot Recover on Chevron's Bond Because the Injunction Did Not Proximately Cause Them Any Harm.**

Chevron posted the $21.8 million bond "simply to protect the LAPs' Representatives against any injury they may suffer if they are enjoined for a period from seeking to enforce the judgment and the injunction ultimately proves to have been inappropriate—in other words, to ensure payment of any damages caused by the delay in enforcement." Dkt. 181 at 119. In opposing this motion, Defendants have failed to assert that they were damaged in any way by the delayed enforcement of the judgment during the several months that the injunction was in place. And because the injunction was vacated more than six months ago, and the bond no longer serves any purpose, the Court should exonerate the entire bond.

Defendants' own authorities confirm that any damages recoverable from a preliminary injunction bond must have been "proximately caused by the injunction" itself. *Factors Etc., Inc. v. Pro Arts, Inc.*, 562 F. Supp. 304, 308 (S.D.N.Y. 1983) ("Of course, defendants are entitled only to those damages shown to have been proximately caused by the injunction.") (cited in Opp. at 3); *see also Blumenthal v. Merrill Lynch*, 910 F.2d 1049, 1056 (2d Cir. 1999) (wrongfully enjoined parties are "entitled to damages as may be shown to have been proximately caused by the injunction up to the amount of the bond."). "Proximate cause is that which in a natural sequence, unbroken by any new cause, produces that event and without which that event would not have occurred." *Philips ex rel. Green v. City of New York*, 453 F. Supp. 2d 690, 742 (S.D.N.Y. 2006).[1]

Any "delay in enforcement" of the judgment could not have been proximately caused by the injunction. Defendants do not dispute—nor could they, given their repeated admissions in

---

[1] Defendants' vague invocation of unspecified, "indirect" damages flowing from the injunction (Opp. at 8, 9, 10) is not supported by any evidence, and irreconcilable with the "proximate causation" requirement of New York and federal law.

3

the Second Circuit and elsewhere—that the Ecuadorian judgment was unenforceable during Chevron's appeal in Ecuador, which did not conclude until January 3, 2012, more than three months after the Second Circuit vacated the injunction. *See, e.g.,* Mastro Dec.,[2] Ex. 4 at 54 ("[T]he judgment will remain *unenforceable* at least until the intermediate Ecuadorian appeals court renders its decision." (emphasis added)); Mastro Dec., Ex. 3 at 54. Nor can the LAPs argue they were precluded from preparing to enforce the judgment, as the Second Circuit entered an order staying that portion of the injunction that the LAPs claimed enjoined them from taking those actions. Mastro Dec., Ex. 2. And, in order to convince the Second Circuit to vacate the injunction, the LAPs additionally stipulated that they would not attempt enforcement until after the appellate court ruled. Mastro Dec., Ex. 6.

Thus, to the extent that there was "harm" to any party from delayed enforcement of the fraudulent Ecuadorian judgment—and Defendants have failed to specify any such harm—it was the natural consequence of the Ecuadorian appellate process, not the injunction. Any "harm" from "delayed" enforcement would have occurred anyway even without the injunction, negating any proximate causation as a matter of law. *See Shah v. Pan Am World Servs., Inc.*, 148 F.3d 84, 96 (2d Cir. 1998) (approving jury instruction stating that proximate causation is absent where the harm "would have occurred anyway").

## II. Defendants' Procedural Objections Are Meritless.

Defendants do not cite a single case supporting the proposition that a court should not exonerate a preliminary injunction bond where the injunction has been dissolved and where no damages can be shown. So Defendants make a number of procedural objections to Chevron's motion, including: (a) the motion is "premature"; (b) the Court should maintain the bond be-

---

[2] All references to the "Mastro Dec." are to the Declaration of Randy M. Mastro in Support of Chevron Corporation's Motion by Order to Show Cause, filed March 13, 2012 (Dkt. 425).

4

cause of an unspecified risk of latent harm materializing in the future; (c) the Court should maintain the bond pending resolution of Patton Boggs's claims in New Jersey; and (d) Chevron's motion is akin to an improper declaratory judgment action. Each of these objections lacks merit.

### A. Chevron's Motion Is Not "Premature."

Defendants claim that Chevron's motion is "improper and premature" because "exoneration of a bond is disfavored as a matter of law." (Opp. at 2.) That is wrong. Numerous courts have entertained, and granted, motions to exonerate injunction bonds after the underlying injunctions have been dissolved or vacated. *See, e.g.*, *Pacific Rollforming, LLC v. Trakloc N. Am., LLC*, 2009 WL 3784613, at *1, *2 (S.D. Cal. Nov. 9, 2009) (granting motion to exonerate bond following a dissolution of the preliminary injunction); *Sletten*, 2006 WL 3717375, at *1, *2 (granting motion to exonerate bond following reversal of injunction on appeal).

Defendants rely on inapposite authorities to argue that this Court cannot exonerate the bond before this action is finally concluded. (Opp. at 2-3.) In *Buddy Sys., Inc. v. Exer-Genie, Inc.*, 545 F.2d 1164 (9th Cir. 1976), the court addressed the jurisdictional question of whether a party could maintain a collateral action on a bond after the bond had been vacated in the underlying suit. *See id*. at 1166, 1169-70. That is not at issue here. And in *Benrus Watch Co. v. Weinstein Wholesale Jewelers, Inc.*, 163 N.E.2d 406 (Ohio Ct. App. 1959), the trial court exonerated a bond "without the reception of evidence" about whether the injunction should have been granted. *Id.* at 410. Again, that is not at issue here. These cases have no application where, as here, the injunction was vacated more than six months ago and all parties have been given notice and an opportunity to present evidence supporting any alleged damages flowing from the injunction.[3]

---

[3] It is true that an aggrieved party has the option to bring a motion under Rule 65.1 or to initiate a collateral action in the same court under 28 U.S.C. § 1352. (Opp. at 7.) But where, as here, it is indisputable as a matter of law that a vacated injunction caused no harm, nothing precludes a court from granting a mo-

### B. There Is No Basis for Maintaining the Bond in Anticipation of Defendants' Unidentified "Indirect" Future Harm.

As previously explained, Defendants are unable to articulate any damages they allegedly suffered as a result of an injunction that was vacated more than six months ago. Yet Defendants assert that the Court should nonetheless maintain the bond in place—at Chevron's continuing expense—because of a theoretical possibility that some unspecified harm might arise at some unidentified point in the future. (Opp. at 9.) This is nonsense.

First, Defendants say that the "effects [of a preliminary injunction] may not manifest until long after the injunction is dissolved." (Opp. at 9.) That may theoretically be true in certain unique circumstances, but Defendants do not identify any facts suggesting it could be true here even in the abstract.[4] And such a claim is inherently unbelievable here, when their own lawyers—Patton Boggs—have already filed a complaint against Chevron in a New Jersey federal court claiming to know now they have such a right to the entirety of the bond and seeking to recover "wrongful injunction" damages. *See* Supplemental Declaration of Randy M. Mastro in Further Support of Chevron Corporation's Motion to Exonerate Chevron's $21.8 Million Bond ("Supp. Mastro Dec."), Ex. 1, ¶¶ 68-70. Thus, it is simply not credible for Defendants to argue that they have yet to feel the effects of the vacated injunction at the same time that their lawyers have filed a complaint premised on supposed injuries caused by this Court's order. And Defendants do not even attempt to explain how any "damages" flowing from the injunction could still be unknown to them more than six months after the injunction was vacated.

---

tion to exonerate the bond.

[4] In support of their novel "latent harm" theory, Defendants rely on irrelevant case law that concerns (a) the degree of specificity required of an injunction order at the time of issuance, and (b) considerations that factor into setting the amount of the bond in the first instance. (Opp. at 9, citing *S.C. Johnson & Son, Inc. v. Clorox Co.*, 241 F.3d 232 (2d Cir. 2001); *LaForest v. Former Clean Air Holding Co.*, 376 F.3d 48 (2d Cir. 2004); Dan B. Dobbs, *Should Security Be Required as a Pre-Condition to Provisional Injunctive Relief?*, 52 N.C. L. REV. 1091 (1974).)

Second, it is well-settled that Defendants' speculative and conclusory allegations of harm are insufficient to sustain a claim against the bond. *See Greenwood Cnty. v. Duke Power Co.*, 107 F.2d 484, 486-87 (4th Cir. 1939) (rejecting recovery on injunction bond where party claimed damages on expected profits from a business contemplated but not yet established); *BD ex rel. Jean Doe v. DeBuono*, 193 F.R.D. 117, 139 (S.D.N.Y. 2000) ("The damages recoverable in tort actions cannot be contingent, uncertain, or speculative . . . ."). While a party "d[oes] not need to [prove damages] to a mathematical certainty," it must still "properly substantiate the damages sought." *Nokia Corp. v. InterDigital Inc.*, 645 F.3d 553, 560 (2d Cir. 2011). In similar circumstances, courts have granted bond exoneration motions because defendants could not prove harm resulting from the injunction. *E.g.*, *Sletten*, 2006 WL 3717375, at *1 ("Defendants have provided the court with no showing that actual damages occurred aside from the unsupported recitations of counsel.").

Third, Defendants suggest, without elaboration, that the types of recoverable damages might be broader than merely those "caused by delay in enforcement." (Opp. at 8.) But they do not explain what other sorts of damages they could possibly be referring to, nor do they submit any evidence to substantiate them. In fact, they do not even claim that they suffered any such harm. In any event, Defendants' argument makes little sense because, even assuming *arguendo* the injunction delayed enforcement of the judgment for several months, recoverable damages must have arisen, if at all, because of that delay. *See Medafrica Line, S.P.A. v. Am. W. African Freight Conf.*, 654 F. Supp. 155, 156 (S.D.N.Y. 1987) ("The only damages recoverable from an injunction bond are those arising from the operation of the injunction itself and not from damages occasioned by the suit independently of the injunction.").

Finally, Defendants' argument that they have a yet-to-expire "statute of limitations" period in which to bring a claim against the bond (Opp. at 6 n.7) is baseless, and in any event beside the

7

point. They do not identify any case that recognizes such a "statute of limitations." They appear to make one up out of whole cloth. And even if there were a statute of limitations applicable to bringing a separate proceeding to collect on a bond, that would be of no relevance here, where the issue is properly before the Court on a motion in the pending litigation in which the bond was issued, and all potentially interested parties have been given the opportunity to oppose this motion.

### C. This Court Should Decline Defendants' Request That It Forbear While Patton Boggs Continues Its Machinations.

As this Court is aware (Mot. at 1-3), Patton Boggs has taken the unprecedented step of filing a separate action in the District of New Jersey to recover for itself the entirety of a bond posted in this action for the benefit of Patton Boggs's own clients.[5] In contrast to the Defendants here (who claim that any harm from the injunction has yet to "manifest" itself (Opp. at 9)), Patton Boggs asserts that the injunction "choked off the [Defendants'] ability to obtain funding that would allow them to reasonably contend with" Chevron's lawyers (Supp. Mastro Dec., Ex. 1, ¶ 34), and it thus seeks "damages" for unpaid legal fees and the "inability to perform certain legal services for its clients" (*id*., ¶¶ 47, 48). "[I]ts clients," of course, means the LAP Defendants here.[6]

As this Court is also aware, Patton Boggs has since taken the even more outrageous step of seeking a restraining order from the District of New Jersey to compel Chevron to withdraw this motion. Mastro Dec., Ex. 19. Patton Boggs chose to file in New Jersey as part of its longstanding campaign to avoid appearing before this Court, even though it has ghostwritten other co-counsel's submissions here and even made one brief appearance, later withdrawn the same day. Dkts. 378, 379. By choosing not to file an opposition to Chevron's motion to exoner-

---

[5] Chevron's motion to transfer Patton Boggs's New Jersey case to the Southern District of New York under the "first-filed" rule or 28 U.S.C. § 1404(a) is pending and is scheduled to be heard on April 16, 2012.
[6] If the LAPs had become unable to pay their lawyers as a result of the injunction and were now in debt to Patton Boggs, the LAPs would have asserted such damages *in these proceedings*. That they make no claim here confirms not only that the LAPs suffered no harm, but that Patton Boggs did not either.

8

ate the bond in this Court, despite being personally served with the motion and notwithstanding Chevron's explicit statement that it welcomes Patton Boggs appearing to contest here, Patton Boggs made a calculated gamble. *See* Supp. Mastro Dec., Ex. 2.

Patton Boggs's maneuvering highlights the irreconcilable conflict that exists between Patton Boggs and its clients. Among other things, Defendants argue that this Court should refrain from addressing any issues concerning damages under the bond. (Opp. at 4-5, 9.) Yet in the District of New Jersey, Defendants' lawyers at Patton Boggs allege that they have already been harmed by the injunction and that the bond issue is ripe for decision. In fact, Patton Boggs seeks an order finding Chevron liable to Patton Boggs alone for the full amount of the $21.8 million bond—which, if granted, would leave nothing for Patton Boggs's clients here. Thus, it is curious, indeed, that Defendants now take the position they do, facilitating the actions of their law firm to collect the entirety of a bond intended to protect them, in apparent conflict with their own interests.

### D. Defendants' Analogies to a Declaratory Judgment Action Are Misplaced.

Defendants analogize Chevron's motion to "an improper action for declaratory relief." (Opp. at 5.) But Chevron has not filed "an action for declaratory relief." Rather, Chevron's motion to exonerate is just that—a motion in an ongoing action to dispose of a bond that this Court ordered Chevron to post in connection with an injunction that has long since been vacated. And Patton Boggs's brief seeking an injunction from the District of New Jersey recites authority making plain that filing a motion directed to the bond in the action in which the bond was issued is a proper means of resolving any entitlement to the bond. *See* Supp. Mastro Dec., Ex. 3 at 5 ("Rule 65.1 provides a *permissive mechanism* whereby parties aggrieved by a wrongfully issued injunction may summarily seek to recover on an injunction bond b*y filing a motion in the original suit rather than by bringing a separate action*." (Patton Boggs's emphases) (quotation omitted)).

9

Regardless, there is nothing improper about bringing a declaratory judgment action to resolve a controversy about a bond ordered by the same court. *Cf. Kidder, Peabody & Co. v. Maxus Energy Corp.*, 925 F.2d 556, 563 (2d Cir. 1991) (allowing declaratory judgment action to "dispel all uncertainty regarding the liability"); *Super Tire Eng'g Co. v. McCorkle*, 416 U.S. 115, 122 (1974) (declaratory judgment action proper where issue, "by its continuing and brooding presence, casts what may well be a substantial adverse effect on the interests of the petitioning parties").[7]

Moreover, Defendants' analogy collapses under the weight of the ever-shifting positions of Defendants and their counsel. On the one hand, Defendants claim there is no "actual controversy" because Chevron's motion relates to "past actions" and the parties here "lack a legally cognizable interest in the outcome." (Opp. at 5.) On the other hand, Patton Boggs's federal action in New Jersey purports to seek recovery on the bond now, and to compel Chevron to withdraw its motion based on its purported present claims. But this Court need not attempt to reconcile these contradictory positions. If Defendants are unable or unwilling to assert claims in this Court, where the bond is pending, and when put to the test by a proper motion, that is not a reason to deny Chevron's motion. Rather, it is a conclusive reason to exonerate the bond now.

## CONCLUSION

In light of Defendants' admitted lack of damages resulting from delayed enforcement of their fraudulent judgment, Chevron respectfully requests that this Court exonerate Chevron's $21.8 million preliminary injunction bond.

---

[7] Defendants' reliance on *J.S. v. Attica Cent. Sch.*, 2011 WL 6140527, at *3 (W.D.N.Y. Dec. 9, 2011), is misplaced. There, a declaratory judgment action was dismissed because the claims were moot. And in *Mobile Mech. Contractors Ass'n v. Carlough*, 566 F.2d 1213, 1217 (5th Cir. 1977), also cited by Defendants, the declaratory judgment action failed because it was unripe: after filing suit, the parties renegotiated the subject contract and "[t]he abstract possibility that Mobile may suffer injury [was] not enough" to invoke a court's jurisdiction. *Id.* at 1217, 1219-20. In contrast, here the bond is still in existence.

Dated:  April 2, 2012

Respectfully submitted,

GIBSON, DUNN & CRUTCHER LLP

*/s/ Randy M. Mastro*
Randy M. Mastro
200 Park Avenue
New York, New York 10166
Telephone: 212.351.4000
Facsimile: 212.351.4035

Andrea E. Neuman
3161 Michelson Drive
Irvine, California 92612
Telephone: 949.451.3800
Facsimile: 949.451.4220

William E. Thomson
333 South Grand Avenue
Los Angeles, California 90071
Telephone: 213.229.7000
Facsimile: 213.229.7520

Attorneys for Plaintiff Chevron Corporation

11